# IN THE SUPREME COURT OF TEXAS

═══════════

No. 17-0538

═══════════

SABRE TRAVEL INTERNATIONAL, LTD., PETITIONER,

v.

DEUTSCHE LUFTHANSA AG, AUSTRIAN AIRLINES AG,
BRUSSELS AIRLINES, NV/SA, AND SWISS INTERNATIONAL AIR LINES, LTD.,
RESPONDENTS

═══════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

═══════════════════════════════════

**Argued October 30, 2018**

JUSTICE GREEN delivered the opinion of the Court.

In this case, we consider whether an appellate court's denial of a permissive interlocutory appeal prevents this Court from reviewing the merits of the underlying interlocutory order. We hold that it does not under the plain language of former Texas Government Code section 22.225(d). In addition, we consider whether the federal Airline Deregulation Act (ADA) preempts an airline's claim for tortious interference with contract brought under state law. We hold that no preemption occurs because the tortious interference claim does not relate to the airline's prices, routes, or services. Nor does the claim amount to the enforcement of a state law, rule, regulation, standard, or other provision having the force and effect of law that is within the ADA's preemptive reach. Accordingly, we affirm the trial court's denial of the motion to dismiss based on preemption.

# I. Background

Direct connections in the airline industry refer to methods used to market airfare directly to travel agents. Once travel agents gain access to an airline's reservation system through a direct-connect method, they can review the airline's inventory, check flight availability, price flight options, and book flights for passengers. Airlines also use indirect methods, such as intermediaries, to market and sell airfare. Sabre Travel International, Ltd., has long served as an intermediary in the travel industry. Through a computerized system known as a Global Distribution System (GDS), Sabre connects airlines with consumers by aggregating travel offerings of multiple airlines for comparison shopping by travel agents. Sabre's GDS is one of the largest on the market, aggregating content for over 400 airlines.

Deutsche Lufthansa Airline Group owns multiple subsidiary airlines. Four of those airlines (collectively, Lufthansa) contracted with Sabre to market and sell tickets through Sabre's GDS. Under the contracts, Sabre received a booking fee when travel agents booked flights on Lufthansa. The contracts also contained non-discrimination provisions, preventing Lufthansa from disadvantaging travel agents who use Sabre's GDS instead of a competing GDS.

Concerned with the expense of GDS services, Lufthansa calculated that it cost the airlines approximately $18 more for every ticket booked through a GDS. To allocate this cost, increase transparency, and offset the high fees of GDS services, Lufthansa introduced an $18 surcharge to airline tickets sold through GDSs. The surcharge does not apply to tickets booked through non-GDS channels, such as direct connections and Lufthansa's own websites.

2

Sabre protested that the surcharge violated the contracts' non-discrimination provisions because Lufthansa did not impose the same surcharge equally across all GDSs. Lufthansa maintains otherwise, arguing that its surcharge complies with the parties' contracts. This dispute became the subject of Lufthansa's declaratory judgment suit against Sabre, and Sabre's corresponding counterclaim for breach of contract.

Sabre, in response to the surcharge, allegedly began encouraging travel agents to breach their contracts with Lufthansa by directing them to book travel through Lufthansa's direct connections, where there is no surcharge, and then enter the itineraries into Sabre's GDS so that travel agents could avoid the surcharge and Sabre could collect its booking fee. Because of Sabre's alleged actions, Lufthansa amended its petition to include a claim for tortious interference with contract between Lufthansa and its travel agents. Lufthansa also added a breach of contract action against Sabre for charging Lufthansa for non-billable administrative bookings—in other words, passive bookings.

Sabre promptly filed a motion to dismiss Lufthansa's tortious interference claim under Texas Rule of Civil Procedure 91a, arguing that the federal ADA preempts claims for tortious interference with contract. *See* 49 U.S.C. § 41713(b)(1) (providing a federal mandate that preempts any state "law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier"); TEX. R. CIV. P. 91a (providing for dismissal of a cause of action that has no basis in law or fact). The trial court denied Sabre's Rule 91a motion but certified the legal question under Texas Civil Practice and Remedies Code section 51.014(d)—providing for permissive interlocutory appeals. In its order, the court stated that the applicable Texas case law,

3

while persuasive, "is factually different in ways which could be construed to make it distinguishable as controlling authority" regarding whether the ADA preempts tortious interference claims by airlines, and that "an immediate appeal may materially advance the termination of litigation." *See Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 221–22 (Tex. App.—Fort Worth 2009, pet. denied) (holding that the ADA did not preempt American Airlines' tortious interference claim brought to protect against a black-market reseller brokering American Airlines' frequent-flyer miles). The interlocutory order also noted that because holdings from other jurisdictions concluded that ADA preemption applies to claims against GDSs, the question "is ripe for consideration, especially from the Second Court of Appeals which authored the *Frequent Flyer Depot* opinion and, ultimately, the Texas Supreme Court."

The court of appeals denied the permissive appeal in a single-sentence memorandum opinion without explanation but noted in a footnote that "courts strictly construe the interlocutory appeals statute." 549 S.W.3d 600, 601 n.3 (Tex. App.—Fort Worth 2017, pet. granted) (mem. op.) (citing *Blakenergy, Ltd. v. Oncor Elec. Delivery Co.*, No. 02-14-00241-CV, 2014 WL 4771736, at *1 & n.2 (Tex. App.—Fort Worth Sept. 25, 2014, no pet.) (mem. op.) (per curiam)).

Sabre filed a petition for review in this Court, asserting that the court of appeals abused its discretion in denying the permissive interlocutory appeal and that the ADA preempts Lufthansa's tortious interference claim. Lufthansa, on the other hand, argues that there is no preemption under the ADA, and even if there is, this Court has no jurisdiction to hear the case because the court of appeals denied the permissive interlocutory appeal. We granted the petition. 61 Tex. Sup. Ct. J. 1420 (June 15, 2018).

4

## II. Jurisdiction

Our jurisdiction turns on the issue of whether an intermediate appellate court's denial of a permissive interlocutory appeal prevents this Court from reaching the merits of the underlying interlocutory order. We hold that it does not under the plain language of former Texas Government Code section 22.225(d), which states that "[a] petition for review is allowed to the Supreme Court for an appeal from an interlocutory order described by Section 51.014(a)(3), (6), or (11), or (d), Civil Practice and Remedies Code."[1] Act of May 30, 2011, 82d Leg., R.S., ch. 203, § 3.02, 2011 Tex. Gen. Laws 757, 758, *repealed by* Act of May 29, 2017, 85th Leg., R.S., ch. 150, § 4(3), 2017 Tex. Gen. Laws 291, 292. The trial court certified the interlocutory order according to section 51.014(d), and for the reasons explained below, we conclude that implicates our jurisdiction under section 22.225(d).

### A. Section 51.014(d) & (f)—Permissive Interlocutory Appeals

As a general rule, appeals may be taken only from final judgments. *E.g.*, *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). "A judgment is final for purposes of appeal if it disposes of all pending parties and claims in the record, except as necessary to carry out the decree." *Id.* Consistency, finality, and judicial economy fix the final judgment rule in our jurisprudence so that appellate courts, including this Court, decide issues on a full record, do not unnecessarily delay the underlying trial, avoid futility, and consider all issues in a single round of review. *See, e.g.*,

---

[1] Because the trial court entered its order on May 1, 2017, former Texas Government Code section 22.225(d) applies. *See* Act of May 29, 2017, 85th Leg., R.S., ch. 150, § 5, 2017 Tex. Gen. Laws 291, 292 ("The repeal of Section 22.225(d), Government Code, applies only to an interlocutory order signed on or after the effective date of this Act, [September 1, 2017]. An interlocutory order signed before the effective date of this Act is governed by the law applicable to the order immediately before the effective date of this Act, and that law is continued in effect for that purpose."). Accordingly, our reference to section 22.225(d) is to the 2011 version for all purposes in this opinion.

*Hernandez v. Ebrom*, 289 S.W.3d 316, 322 (Tex. 2009) (Jefferson, C.J., dissenting) ("The purposes of the final judgment rule are to avoid piecemeal litigation, to promote judicial efficiency, and to defer to the decisions of the trial court." (citation omitted)).

There are, of course, exceptions to the final judgment rule that allow an immediate appeal before final judgment when the issue is so important that an answer should not wait until the case concludes. The Texas Constitution provides such an exception for certain appeals. *See* TEX. CONST. art. V, § 3–b (allowing direct appeals to this Court from a trial court in injunction cases involving matters of constitutionality). Likewise, this Court's writ power provides a mechanism for appellate review before final judgment in some circumstances. *See, e.g.*, TEX. CONST. art. V, § 3(a); TEX. GOV'T CODE § 22.002; *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (observing that mandamus is an extraordinary immediate remedy used to compel a state official, usually a trial judge, to act according to law). At issue in this case is the exception to the final judgment rule provided by the interlocutory appeals statute, a legislative mandate for an immediate appeal in certain cases before final judgment. TEX. CIV. PRAC. & REM. CODE § 51.014.

Under section 51.014(a), the Legislature authorized thirteen specific instances in which "[a] person may appeal from an interlocutory order of a district court, county court of law, statutory probate court, or county court." *Id.* § 51.014(a). Colloquially, these instances are referred to as "interlocutory appeals as of right," because parties need not secure judicial permission before filing an interlocutory appeal. *See id.* Intermediate appellate courts have no discretion to decline interlocutory appeals brought under section 51.014(a). *See id.*

6

By contrast, section 51.014(d) provides:

> On a party's motion or on its own initiative, a trial court in a civil action may, by written order, permit an appeal from an order that is not otherwise appealable if:
>
> > (1) the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion; and
> > (2) an immediate appeal from the order may materially advance the ultimate termination of the litigation.

*Id.* § 51.014(d). Subsection (f) further provides:

> An appellate court may accept an appeal permitted by Subsection (d) if the appealing party, not later than the 15th day after the date the trial court signs the order to be appealed, files in the court of appeals having appellate jurisdiction over the action an application for interlocutory appeal explaining why an appeal is warranted under Subsection (d). If the court of appeals accepts the appeal, the appeal is governed by the procedures in the Texas Rules of Appellate Procedure for pursuing an accelerated appeal. The date the court of appeals enters the order accepting the appeal starts the time applicable to filing the notice of appeal.

*Id.* § 51.014(f). By using the phrase "may accept" in section 51.014(f), the Legislature conveyed a discretionary function in the court of appeals. The same can be said for the trial court regarding the phrase "may . . . permit" in subsection (d). These instances are colloquially referred to as "permissive interlocutory appeals," as the parties have no right to an immediate appeal and must secure judicial permission.

Consistent with these statutory provisions, we promulgated procedural rules to reflect a discretionary doctrine. *See* TEX. R. CIV. P. 168 ("On a party's motion or on its own initiative, a trial court may permit an appeal from an interlocutory order that is not otherwise appealable, as provided by statute."); TEX. R. APP. P. 28.3(a) ("When a trial court has permitted an appeal from an interlocutory order that would not otherwise be appealable, a party seeking to appeal must petition the court of appeals for permission to appeal."). In the comments to Rule 28.3, we explained that

7

the 2011 amendments to section 51.014 "eliminated the prior requirement that the parties agree to the appeal and reinstated a requirement that the court of appeals also permit the appeal." TEX. R. APP. P. 28.3 cmt. We further noted that "[t]he petition procedure in Rule 28.3 is intended to be similar to the Rule 53 procedure governing petitions for review in the [Texas] Supreme Court," meaning the courts of appeals can similarly accept or deny a permissive interlocutory appeal as we can a petition for review. *Id.*; *see also* TEX. R. APP. P. 28.3(k) (clarifying that if a petition seeking interlocutory appeal is granted, the appeal is thereby perfected in the court of appeals).

Both Sabre and Lufthansa recognize the court of appeals' discretion to accept or deny a permissive interlocutory appeal under section 51.014(f). However, they do not agree about the extent and effect of that discretion. Sabre, in alternatively seeking a writ of mandamus, argues that we should hold that the court of appeals abused its discretion in denying the permissive appeal because the elements of section 51.014(d) were satisfied, while Lufthansa claims that it would be exceptionally inappropriate for this Court to overturn a discretionary denial of a permissive appeal.

As Lufthansa correctly observes, the Legislature modeled section 51.014(d) after the federal counterpart to permissive interlocutory appeals. *Compare* 28 U.S.C. § 1292(b),[2] *with* TEX. CIV.

---

[2] Section 1292(b) of the United States Code provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* that application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b).

PRAC. & REM. CODE § 51.014(d), (f). The United States Supreme Court has interpreted section 1292(b) as providing federal circuit courts absolute discretion to accept or deny permissive appeals. *See, e.g.*, *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978), *superseded on other grounds by rule*, FED. R. CIV. P. 23(f), *as stated in Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017) (holding that despite a district judge certifying an order under § 1292(b), "the appellant still 'has the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.' The appellate court may deny the appeal *for any reason*, including docket congestion." (emphasis added) (citations omitted)); *see also Parcel Tankers, Inc. v. Formosa Plastics Corp.*, 764 F.2d 1153, 1156 (5th Cir. 1985) ("[T]he discretion afforded the courts of appeal in reviewing petitions for leave to bring § 1292(b) appeals has been likened to that of the [United States] Supreme Court in controlling its certiorari jurisdiction." (citation omitted)). That interpretation has led some commentators to conclude that the discretion to deny interlocutory appeals under section 1292(b) is so broad in the federal circuit courts that United States Supreme Court reversal should never be available. *See* 17 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4036, at 17 n.24 (2007).

We agree that Texas courts of appeals have discretion to accept or deny permissive interlocutory appeals certified under section 51.014(d), just as federal circuit courts do. Our procedural rules make that clear. *See* TEX. R. CIV. P. 168; TEX. R. APP. P. 28.3. Here, the trial court certified an interlocutory appeal under section 51.014(d), but the court of appeals exercised its discretion—as it is entitled to do—to decline acceptance of the appeal, citing authority for strictly

9

construing the interlocutory appeals statute. 549 S.W.3d at 601 n.3 (citing *Blakenergy*, 2014 WL 4771736, at *1 & n.2). Under the plain language of section 51.014(d) and (f), we cannot say that the court of appeals abused its discretion.

We do caution, however, that while courts of appeals have discretion to deny acceptance of permissive interlocutory appeals, the Legislature in its enactment of section 51.014(d) and (f) has recognized the benefit of appellate courts accepting such appeals when the threshold for an exception to the final judgment rule is met. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(d), (f) (requiring a controlling question of law on which there is a substantial ground for difference of opinion, where an immediate appeal may materially advance the ultimate termination of the litigation). When courts of appeals accept such permissive appeals, parties and the courts can be spared the inevitable inefficiencies of the final judgment rule in favor of early, efficient resolution of controlling, uncertain issues of law that are important to the outcome of the litigation. Indeed, the Legislature enacted section 51.014 to provide "for the efficient resolution of certain civil matters in certain Texas courts" and to "make the civil justice system more accessible, more efficient, and less costly to all Texans while reducing the overall costs of the civil justice system to all taxpayers." Senate Comm. on State Affairs, Engrossed Bill Analysis, Tex. H.B. 274, 82d Leg., R.S. (2011). If all courts of appeals were to exercise their discretion to deny permissive interlocutory appeals certified under section 51.014(d), the legislative intent favoring early, efficient resolution of determinative legal issues in such cases would be thwarted. Just because courts of appeals can decline to accept permissive interlocutory appeals does not mean they should; in fact, in many

10

instances, courts of appeals should do exactly what the Legislature has authorized them to do—accept permissive interlocutory appeals and address the merits of the legal issues certified.

## B. Section 22.225(d)—Interlocutory Appeal to the Supreme Court

While we recognize the discretion courts of appeals have to accept or deny permissive interlocutory appeals, we disagree with the suggestion that how a court exercises its discretion determines whether this Court has jurisdiction to consider the merits of an interlocutory order that meets the Legislature's threshold for an exception to the final judgment rule—a controlling question of law on which there is a substantial ground for difference of opinion, where an immediate appeal may materially advance the ultimate termination of the litigation. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(d). Section 22.225 sets out when an interlocutory appeal can be brought in this Court: "A petition for review is allowed to the Supreme Court for an appeal from an interlocutory order described by Section 51.014 . . . (d), Civil Practice and Remedies Code." Act of May 30, 2011, 82d Leg., R.S., ch. 203, § 3.02, 2011 Tex. Gen. Laws 757, 758 (repealed 2017). Under the plain language of the statute, the jurisdictional predicate for review in this Court is satisfied when the trial court certifies an interlocutory appeal under section 51.014(d) because section 51.014(d) requires only the *trial court's permission* to appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(d) ("On a party's motion or on its own initiative, a trial court in a civil action may, by written order, *permit an appeal from an order* that is not otherwise appealable . . . ." (emphasis added)). If the trial court concludes that the threshold requirements are satisfied and certifies the interlocutory order according to section 51.014(d), it "permits an appeal" from the order, and this Court's jurisdiction

11

is then proper under section 22.225(d) regardless of how the court of appeals exercises its discretion over the permissive appeal.

Lufthansa's reliance on section 51.014(f) to conclude that this Court does not have jurisdiction is misplaced. Section 51.014(f) provides: "An appellate court may accept an appeal permitted by [section 51.014(d)] . . . . If the court of appeals accepts the appeal, the appeal is governed by the procedures in the Texas Rules of Appellate Procedure for pursuing an accelerated appeal." *Id.* § 51.014(f). According to Lufthansa, because the court of appeals declined to accept the permissive appeal, there has been no "appeal" from the trial court's order that this Court can review on the merits under section 22.225(d); that is, section 22.225(d) provides jurisdiction in this Court only over "*an appeal from* an interlocutory order" described by section 51.014(d). *See* Act of May 30, 2011, 82d Leg., R.S., ch. 203, § 3.02, 2011 Tex. Gen. Laws 757, 758 (repealed 2017) ("A petition for review is allowed to the Supreme Court for *an appeal from* an interlocutory order described by Section 51.014 . . . (d), Civil Practice and Remedies Code." (emphasis added)). Lufthansa believes that the "appeal from" language requires both the trial court's certification of an appeal under section 51.014(d) *and* the appellate court's acceptance of that appeal under section 51.014(f). Without the appellate court's acceptance, claims Lufthansa, there is no "appeal from an interlocutory order" that this Court can review per section 22.225(d). We disagree.

No statute or rule says, nor have we ever held, that this Court lacks jurisdiction when a court of appeals declines to accept a permissive interlocutory appeal. The word "appeal," as used in section 51.014(d), is conditioned only on the trial court permitting an appeal, and not on the court of appeals' acceptance of a party's request for permissive interlocutory review. *See* TEX. CIV. PRAC.

12

& REM. CODE § 51.014(d); *see also* TEX. R. CIV. P. 168 cmt. (referring to "the trial court's permission to appeal"). In other words, when the trial court issues an order certifying the case for interlocutory review, it becomes an "appeal." Moreover, nowhere does the text of section 51.014 support some sort of distinction in terminology between a pre-acceptance request for interlocutory review and a post-acceptance appeal. To the contrary, whether a party seeks interlocutory review "as of right" or seeks permissive interlocutory review, the statute refers to an "appeal from an interlocutory order," "[a]n interlocutory appeal," or simply "an appeal." *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a), (b), (d). Section 51.014(e) likewise refers to permissive interlocutory review as an "appeal" and provides that trial court proceedings are not stayed unless the parties agree or "the trial or appellate court orders a stay of the proceedings pending appeal"—a clear indication that the Legislature will condition status on appellate court authorization or permission when that is what it intends. *Id.* § 51.014(e); *see also TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) (emphasizing that we presume the Legislature chooses its words with care, including words it intends to include and omitting words it intends to omit). Moreover, the language of section 51.014(f) negates Lufthansa's argument that "appeal" refers only to a case that has been accepted for permissive interlocutory review by the court of appeals. Section 51.014(f) provides:

> An appellate court may accept an appeal permitted by Subsection (d) if the appealing party . . . [timely files an application for interlocutory appeal in the proper court]. If the court of appeals accepts the appeal, the appeal is governed by [certain] procedures in the Texas Rules of Appellate Procedure for pursuing an accelerated appeal. The date the court of appeals enters the order accepting the appeal starts the time applicable to filing the notice of appeal.

13

TEX. CIV. PRAC. & REM. CODE § 51.014(f). How could a court accept something that does not yet exist? *See Tex. Workforce Comm'n v. Wichita Cty.*, 548 S.W.3d 489, 495 (Tex. 2018) (explaining that we may disregard a statute's unambiguous language only in exceptional cases where it would produce an absurd, patently nonsensical result). If the Legislature intended the more restrictive meaning of "appeal" that Lufthansa proposes, the statute would refer to acceptance of a "request for interlocutory appeal" or acceptance "as an appeal," or some other such language. *See Entergy Gulf States, Inc., v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009) ("[W]e should always refrain from rewriting text that lawmakers chose . . . ."). Without any indication that the Legislature intended "appeal" to refer only to a case accepted for permissive interlocutory review, we can conclude only that section 22.225(d) authorizes this Court to review a case certified for interlocutory review under section 51.014(d), regardless of whether the court of appeals accepts the appeal.

Further, and in opposition to Lufthansa's position, is the absence of any reference to section 51.014(f) in section 22.225(d). Section 22.225(d) in its entirety provides: "A petition for review is allowed to the Supreme Court for an appeal from an interlocutory order described by Section 51.014(a)(3), (6), or (11), or (d), Civil Practice and Remedies Code." Act of May 30, 2011, 82d Leg., R.S., ch. 203, § 3.02, 2011 Tex. Gen. Laws 757, 758 (repealed 2017). The statute does not say "but only if section 51.014(f) is satisfied" or "only if the court of appeals accepts the request for permissive interlocutory review." Indeed, nowhere is section 51.014(f) mentioned, and we cannot "judicially amend a statute by adding words that are not contained in the language of the statute." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015) (per curiam). Rather, we must apply the statute as written. *Id.*; *see also Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011) (holding

14

that this Court construes "clear and unambiguous statutes according to the language actually enacted and published as law").

We addressed a similar question regarding our jurisdiction under section 22.225(d) a few years ago. In *Phillips Petroleum Co. v. Yarbrough*, 405 S.W.3d 70 (Tex. 2013), a party filed an interlocutory appeal over a class certification. *Id.* at 76. The court of appeals dismissed the interlocutory appeal for want of jurisdiction. *Id.* On the question of whether we had jurisdiction to reach the merits despite the court of appeals' dismissal, we held:

> The Texas Civil Practice and Remedies Code permits an appeal from a trial court's interlocutory order that "certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure." TEX. CIV. PRAC. & REM. CODE § 51.014(a)(3). In turn, we have jurisdiction to consider a petition for review appealing such an order. TEX. GOV'T CODE § 22.225(d).

*Id.* Sabre relies on this language as authority that this Court's jurisdiction is proper under section 22.225(d). Lufthansa distinguishes *Phillips Petroleum* as inapplicable because it resolved a class-certification issue raised in an interlocutory appeal under section 51.014(a)—an appeal as of right—after the court of appeals had dismissed the appeal for lack of jurisdiction. We do not dispute that under section 51.014(a), litigants have a right to have certain questions answered before final judgment. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a). Although litigants have no right to an immediate appeal under section 51.014(d), the distinction between interlocutory appeals as of right under section 51.014(a) and permissive appeals under section 51.014(d) is immaterial to our jurisdiction under the plain language of section 22.225(d). In *Phillips Petroleum*, we said that "the court of appeals had jurisdiction to review the merits of the appeal, *as do we*." 405 S.W.3d at 80 (emphasis added). The same is true in this case. The court of appeals had jurisdiction to review the

15

merits of Sabre's permissive interlocutory appeal under section 51.014(f), as do we under section 22.225(d). We were not prohibited from reaching the merits in *Phillips Petroleum* because the court of appeals dismissed the appeal; likewise, we are not prohibited from reaching the merits here because the court of appeals declined to accept the appeal.

Lufthansa next argues that interpreting section 22.225(d) as we do will create an appeal as of right when the elements of section 51.014(d) are met. However, section 51.014(d) is clear: an interlocutory appeal will lie only if the trial court concludes that the statutory elements are satisfied and certifies the appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(d) ("On a party's motion or on its own initiative, a trial court in a civil action may, by written order, permit an appeal from an order that is not otherwise appealable . . . ."). The parties have no right to appeal under section 51.014(d).

Nor does our interpretation of section 22.225(d) create a direct appeal to this Court. Nothing we have said alters the requirement that a party advancing a permissive appeal must first petition the court of appeals for review before petitioning this Court. *See* TEX. R. APP. P. 28.3(a) ("When a trial court has permitted an appeal from an interlocutory order that would not otherwise be appealable, a party seeking to appeal must petition the court of appeals for permission to appeal."). Sabre correctly requested that the court of appeals address the merits of the certified appeal, and the court of appeals declined. Sabre then correctly requested that this Court address the merits, and section 22.225(d) allows us to accept.

Finally, Lufthansa complains that interlocutory review is disfavored as a general matter because of the importance of the final judgment rule. As we have discussed, the final judgment rule

16

ensures issues are decided on a full record, prevents unnecessary delays in the underlying trial, and allows appellate courts to consider all issues in a single round of review. A departure from the final judgment rule in the form of an interlocutory appeal must be strictly construed because it is "a narrow exception to the general rule that interlocutory orders are not immediately appealable." *CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011); *see also In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 461 (Tex. 2008) ("Appellate courts cannot afford to grant interlocutory review of every claim that a trial court has made a pre-trial mistake."). This is all true, but necessity has driven the Legislature to enact a comprehensive interlocutory appeals statute to allow certain appeals before final judgment when public policy dictates. *See* TEX. CIV. PRAC. & REM. CODE § 51.014. And here, section 51.014 was driven by the public policy of ensuring the efficient resolution of civil suits in certain Texas courts and making the judicial system more accessible, more efficient, and less costly to all taxpayers. Senate Comm. on State Affairs, Engrossed Bill Analysis, Tex. H.B. 274, 82d Leg., R.S. (2011). The pure legal question at issue here is precisely the sort of question section 51.014(d) was enacted for—allowing an early resolution when the interlocutory order meets the Legislature's threshold for an exception to the final judgment rule. An answer now will forestall burdensome and costly international discovery on the tortious interference claim and will eliminate the need for further litigation on this question after conclusion of the case.

To conclude, an appellate court, including this Court, "lacks jurisdiction to review an interlocutory order unless a statute specifically authorizes an exception to the general rule, which is that appeals may only be taken from final judgments." *Quest Commc'ns Corp. v. AT&T Corp.*, 24 S.W.3d 334, 336 (Tex. 2000) (per curiam). Section 22.225(d), together with section 51.014(d),

authorizes the exception and confers jurisdiction over the interlocutory appeal in this Court. The trial court correctly certified the interlocutory appeal according to section 51.014(d), and our jurisdiction is proper under the plain and express text of section 22.225(d). We now turn to the merits of the underlying interlocutory order and Sabre's Rule 91a motion to dismiss.

## III. Preemption Under the ADA

The only issue before us is whether the ADA preempts Lufthansa's tortious interference claim against Sabre. The trial court denied Sabre's Rule 91a motion to dismiss, concluding that the ADA does not preempt Lufthansa's tortious interference claim. We agree. While the record is sparse, there is enough for us to conclude that Lufthansa's tortious interference claim does not relate to the airline's prices, routes, or services, and even if the claim did so relate, it does not amount to any state law, regulation, or policy that Congress was concerned with when enacting the ADA's preemption clause.

### A. Two-Part Test

In 1978, Congress enacted the ADA, which deregulated the airline industry in order to encourage market competition, lower prices, advance innovation and efficiency, and increase the variety and quality of air transportation services. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992); *see also* 49 U.S.C. § 40101(a)(6), (12) (explaining policy considerations behind deregulation). To protect its deregulation objectives, Congress included an express preemption provision in the ADA "[t]o ensure that the States would not undo federal deregulation with regulation of their own." *Morales*, 504 U.S. at 378–79. In its current form, the ADA's preemption clause mandates:

18

Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . .

49 U.S.C. § 41713(b)(1). The United States Supreme Court has recognized that the key phrase "related to" expresses a broad preemptive purpose. *Morales*, 504 U.S. at 383. The Supreme Court has also held that state common law rules fall comfortably within the language of the ADA's preemption provision. *See Nw., Inc. v. Ginsberg*, 572 U.S. 273, 283–84 (2014) (noting that the phrase "other provision having the force and effect of law" is much more broadly worded than other legislation that expressly applies only to a law or regulation; therefore, ADA preemption includes suits at common law).

Following United States Supreme Court holdings, we have applied a two-part test to determine whether common law claims are preempted. *See Delta Air Lines, Inc. v. Black*, 116 S.W.3d 745, 751 (Tex. 2003) (citing *Cont'l Airlines, Inc. v. Kiefer*, 920 S.W.2d 274, 281 (Tex. 1996)). First, we examine whether the claim relates to airline prices, routes, or services. *Id.* Second, we assess whether the claim constitutes the enactment or enforcement of a state law, rule, regulation, standard, or other provision. *Id.* With this framework in mind, we consider whether the ADA preempts Lufthansa's tortious interference claim against Sabre.

### 1. Related to an Airline's Prices, Routes, or Services

Sabre points to the text of the ADA, which preempts any state "law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). The United States Supreme Court has held that the deliberately expansive phrase "relating to [prices], routes, or services" preempts any "State enforcement actions having a

connection with or reference to airline '[prices], routes, or services.'" *Morales*, 504 U.S. at 383–84. And here, Sabre argues, Lufthansa's surcharge relates directly to the *price* of the airline's flights because the surcharge allegedly increases the cost of a ticket by about $18 when travel is booked through Sabre's GDS. If this is true, Lufthansa's tortious interference claim must fail the first prong because Lufthansa is using Texas tort law to enforce higher airline ticket prices.

During oral argument, Lufthansa clarified its position on Sabre's alleged tortious interference. Lufthansa's counsel explained that the dispute involves only booking fees Sabre improperly collected through "passive bookings," not the surcharge. Lufthansa provided this example: A customer requests a $500 ticket from a travel agent, the customer pays $500, and the travel agent books a $500 ticket for the customer via Lufthansa's *direct connections*. The airline then issues a $500 ticket to the customer via the travel agent. No surcharge is imposed, and no GDS is involved. According to Lufthansa, the alleged tortious interference occurred because of conduct *after* tickets are sold. That is, Sabre allegedly induces the travel agent to breach its contract with Lufthansa by making a "passive booking" in Sabre's GDS for the ticket booked through a direct connection. Because the ticket sale is entered in Sabre's GDS, Sabre charges a passive booking fee to Lufthansa for a ticket that was sold and issued *outside and apart from* the GDS system. Lufthansa then pays Sabre's fee under protest, adding to the airline's costs but not affecting its customer's $500 ticket price.

We agree with Lufthansa that price and cost are distinct concepts. Increasing an airline's cost does not automatically lead to a corresponding increase in airline ticket prices. The existing record does not demonstrate that, as a matter of law, the circumstances giving rise to the tortious

interference claim had any effect on airline prices. And while the United States Supreme Court did hold that the deliberately expansive phrase "relating to [prices], routes, or services" preempts any "State enforcement actions having a connection with or reference to airline '[prices], routes, or services,'" *Morales*, 504 U.S. at 383–84, the Supreme Court also noted that "'[s]ome state action may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have pre-emptive effect." *Id.* at 390 (alterations in original) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983)). The tortious interference claim here is based on business dealings between two non-carriers—Sabre and the travel agents. Any connection to Lufthansa's ticket prices is likely too peripheral to be preempted under the first prong of the preemption test.

Lastly, while Sabre does not argue that the claim relates to routes, we address Sabre's contention that the tortious interference claim relates to Lufthansa's services. The essence of Lufthansa's claim, Sabre argues, is that Sabre obstructed Lufthansa's attempt to distribute its *services* through direct connections. Whatever truth this may have, we conclude it is likewise "too tenuous, remote, or peripheral" to have a preemptive effect. To hold otherwise would essentially eliminate any limitation on the ADA's preemptive reach because all claims brought by or against an airline will relate to the airline's services in some distant sense.

## 2. State Enactment or Enforcement

Under the second prong of the test, the ADA preempts the claim if the action amounts to enforcement of a state law, rule, regulation, standard, or other provision having the force and effect of law. *Kiefer*, 920 S.W.2d at 281. Sabre argues that state common law claims (other than for breach of contract) generally constitute "provision[s] having the force and effect of law" and thus

21

fail under the ADA preemption test. *See Nw., Inc.*, 572 U.S. at 281, 289–90 (preempting a state common law claim for breach of the implied covenant of good faith and fair dealing); *Delta*, 116 S.W.3d at 756 (holding that "state tort actions can be state enforcement [of law] under" the ADA). Lufthansa maintains that the ADA preempts claims that have an impermissible regulatory effect on airlines. And these claims, argues Lufthansa, can include airlines' cases against GDS services, such as Sabre's, but the tortious interference claim here does not have an impermissible regulatory effect on any airline. From Lufthansa's view, the claim is merely an attempt to use state law to protect the airline's private contracts with its travel agents.

We begin our analysis with *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995). In *Wolens*, the United States Supreme Court addressed whether the ADA preempted state law claims for consumer fraud and breach of contract. *Id.* at 224–25. The plaintiffs complained that American Airlines violated the state consumer-fraud act and, separately, breached contracts with the plaintiffs because the airline retroactively changed terms and conditions of its frequent-flyer program. *Id.* The Supreme Court explained that although the plaintiffs' claims were related to the prices, routes, or services of an air carrier, the ADA preempted those claims only if they sought to enforce any state law. *See id.* at 226. The consumer fraud claim did seek to enforce a state law within the meaning of the preemption provision because of "the potential for intrusive regulation of airline business practices inherent in state consumer protection legislation." *Id.* at 227–28. The breach of contract claim, by contrast, did not violate the ADA's preemption provision because it did not involve the same potential for intrusive state regulation. *See id.* at 228–33. The Supreme Court explained that

22

the breach of contract claim "allege[ed] no violation of state-imposed obligations, but [sought] recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Id.* at 228.

This Court built on *Wolens* in *Continental Airlines, Inc. v. Kiefer*, our first opportunity to analyze the scope of the ADA's preemption as it relates to personal injury actions. 920 S.W.2d at 275. The two cases consolidated in *Kiefer* dealt with a passenger hit on the head by a briefcase falling from an overhead bin, and an impaired passenger who got into a fight with police. *Id.* We went to great lengths to interpret and apply *Wolens*, drawing a fundamental distinction between what the State dictates and what the airline itself undertakes. *See id.* at 279–82. We explained:

> As *Wolens* recognizes, suits on private contracts involve some enforcement of state law—the law of contracts. *Wolens*' emphasis on the voluntariness of contractual undertakings is important, not because states have no role in enforcing contracts—they do—but because contract law does not effectuate purposes that could have a prohibited regulatory effect on airlines. If contract law were less uniform among the states, varying according to differing States' interests, it might, as the DOT argued in *Wolens*, "effectuate the State's public policies, rather than the intent of the parties" and thus be preempted. It cannot be said that enforcement of contracts involves none of "what the State dictates," but only that contract enforcement involves so little state policy that it cannot be considered regulation of airlines preempted by the ADA.
>
> The duty to exercise ordinary care is different. Unlike a contractual obligation, it is imposed by law, not voluntarily assumed. Enforcement of the duty through a common-law negligence action does not merely give effect to "privately ordered obligations," as a breach of contract suit does. On the other hand, like contract actions, a negligence action does not carry the same "potential for intrusive regulation of airline business practices inherent in state consumer protection legislation." Simple negligence law is not as uniform as contract law, but it is far more policy-neutral than specific-purpose legislation, like consumer protection laws. If states "impose their own public policies . . . on the operations of an air carrier" by allowing enforcement of consumer protection laws but not by allowing suits for breach of the carrier's contracts, allowing negligence actions falls somewhere in between.

23

*Id.* at 282 (citations omitted). We concluded that, with certain reservations for mental anguish and punitive damages, "negligence law is not so policy-laden in imposing liability for personal injuries that suits for damages like those before us are preempted by the ADA." *Id.* We did not, however, categorically rule that personal injury actions are never preempted. *See id.* Preemption questions depend on the nature of the particular claim, and whether other state law claims are preempted requires a "closer working out." *Id.* at 281; *see also Black*, 116 S.W.3d at 756–57 (holding that claims for misrepresentation and fraud are preempted under the ADA).

In light of *Wolens* and *Kiefer*, Lufthansa presents its tortious interference claim as a way to enforce its contracts with various travel agents. That is, according to Lufthansa, a suit by an airline to protect its contracts is like a suit against an airline for breach, which is not preempted. *See Wolens,* 513 U.S. at 228 (holding that a suit for "recovery solely for the airline's alleged breach of its own, self-imposed undertakings" is not preempted by the ADA). Sabre, on the other hand, argues that Lufthansa's characterization of the tortious interference claim as merely a way to protect the vitality of its travel agent contracts is misplaced. According to Sabre, the central question is whether the claim seeks to enforce a state-imposed obligation or is simply an obligation that the parties voluntarily undertook. *See Nw., Inc.*, 572 U.S. at 285–90 (holding that the ADA preempted the plaintiff's effort to supplement its contractual rights with an implied covenant of good faith and fair dealing because the implied covenant was not an obligation the parties voluntarily undertook but was instead imposed by the state). Here, Sabre notes, Lufthansa's tortious interference claim invokes state tort law against Sabre to impose an obligation that Sabre did not voluntarily

24

undertake—a duty to refrain from interfering with contracts between Lufthansa and third-party travel agents.

*Northwest, Inc. v. Ginsberg*, while instructive in other aspects, is not controlling here. *Northwest* stands for the proposition that "[t]he ADA pre-empts a state-law claim for breach of the implied covenant of good faith and fair dealing if it seeks to enlarge the contractual obligations that the parties voluntarily adopt." *Id.* at 273. Although Lufthansa *did* contract with its travel agents and *did* contract with Sabre, Sabre *did not* contract with the travel agents whose contracts Sabre is alleged to have interfered with. And it is these contracts that Lufthansa is seeking to use Texas tort law to protect. Lufthansa is not attempting to enlarge any contractual obligation that it voluntarily adopted with its respective travel agents or with Sabre.

Furthermore, we observe that the case law referred to in the trial court's interlocutory order, *Frequent Flyer Depot, Inc. v. American Airlines, Inc.*, is in line with what we have said here. *See* 281 S.W.3d at 220–22. In that case, the court of appeals analyzed ADA preemption as it applied to a tortious interference claim against a black-market reseller brokering American Airlines' frequent-flyer miles. *Id.* The court held that the ADA did not preempt the tortious interference claim because the claim was an attempt to protect the vitality of the airline's self-imposed obligations and therefore did not have the same impermissible regulatory effect upon prices, routes, or services that Congress was concerned with in enacting the ADA. *Id.* at 221–22. That is consistent with our holdings and our analysis today. As we discussed in *Kiefer*, "claims are not preempted if they do not involve the enforcement of policy-laden state law that too closely approaches a regulatory effect on airlines." *Kiefer*, 920 S.W.2d at 283. Here, Lufthansa is simply

25

asking the court to recognize its contractual relationship with its travel agents. It is highly unlikely that jurisdiction-dependent or policy-intensive state regulations would be implicated by disposition of the claims at issue here. As the record presently stands, we hold that the tortious interference claim is not preempted under the ADA.

## IV. Conclusion

Under former Texas Government Code section 22.225(d), a trial court's order that is certified under section 51.014(d) of the Texas Civil Practice and Remedies Code is the only jurisdictional predicate for a petition for review in this Court. The court of appeals' decision to decline the permissive appeal has no bearing on our jurisdiction under section 22.225(d). Regarding the merits of the underlying interlocutory order, we hold that the ADA does not preempt Lufthansa's tortious interference claim because the action does not relate to the airline's prices, routes, or services. Nor does the claim amount to any state law, regulation, or policy that concerns ADA preemption. Accordingly, we affirm the trial court's denial of Sabre's motion to dismiss pursuant to Texas Rule of Civil Procedure 91a.

_____
Paul W. Green
Justice

OPINION DELIVERED: February 1, 2019

26