

# COURT OF APPEALS

# EIGHTH DISTRICT OF TEXAS

# EL PASO, TEXAS

_____

## No. 08-24-00367-CV
_____

Vickie Jo Perry and Ricky C. Lovings, Appellants

v.

Addie Jo Perry, Appellee

On Appeal from the 335th District Court

Lee County, Texas

Trial Court No. 17, 825

## MEMORANDUM OPINION

Appellant Vickie Jo Perry (Vickie) is the daughter of Appellee Addie Joe Perry (Addie).[1]

Vickie, along with her husband, Appellant Ricky Lovings (Ricky), (collectively, the Lovings) sued

Addie in March 2022 for breach of an alleged December 2011 contract for real property between

---

[1] We use the parties' first names because they have shared surnames.

the Lovings on the one hand, and Addie and her deceased husband, Kenneth Perry, (collectively, the Perrys) on the other. In October 2023, the Lovings amended their petition, adding new claims for breach of contract based on a December 2018 contract for the real property with the Perrys, unjust enrichment, and promissory estoppel. In response, Addie brought counterclaims.

Addie filed for summary judgment on all of the Lovings' claims. The trial court granted the motion without addressing Addie's counterclaims. The Lovings appealed. Because we conclude that the trial court did not render a final, appealable judgment, we dismiss the appeal for lack of subject-matter jurisdiction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The original petition

The Lovings filed their original petition against Addie on March 25, 2022, bringing a single claim for breach of contract. They alleged that on November 6, 2011, they entered into a written contract with the Perrys in which the Perrys agreed to sell them property in Lee County and obtain a survey in exchange for a down payment followed by monthly payments of $400 per month until November 2018.[2] The Lovings maintained they had "made all required payments and otherwise complied with the contract." Noting that Kenneth had passed away, the Lovings alleged that Addie had failed to obtain a survey of the property, refused to transfer title to the property to them as contemplated by the contract, and was threatening to sell the property to a third party.[3] The

---

[2] The petition mistakenly said that "Defendants" agreed to make monthly payments.

[3] Somewhat confusingly, in their petition, the Lovings further alleged that "[t]he contract provided that *plaintiff* would provide an accurate survey of the land by metes and bounds, but *Defendant* failed to do so and surveyed in the incorrect lot, and none of the surveys provided by Defendant were correct, and Plaintiff would not have entered into the agreement to purchase the land at issue (emphasis added)."

Lovings sought damages for the alleged breach of the 2011 contract and an order compelling Addie "to sign a deed to transfer the property as agreed."[4]

To their petition, the Lovings attached a copy of the typed contract containing the Perrys' and Lovings' signatures and $15,000 check made out to Kenneth from Vickie dated November 10, 2016. The check contained a notation in the memo line, stating "paid in full" and "total payment on 5012 hwy 290 Giddings TX."

### B. Addie's answer to the original petition and counterclaims

On April 8, 2022, Addie filed an "Original Answer and Counter-Claim," asserting that she and Kenneth never signed the alleged contract attached to the Lovings' petition and that her signature was forged. She also maintained that the Lovings "never paid the money [they] claim[ed] to have paid" and did not comply with any terms of the alleged contract, including the survey requirement. As to her counterclaim, she asserted Vickie owed her money Addie lent her to "repair teeth" and for a cell phone.

Subsequently, on April 13, 2023, Addie filed a document entitled, "Defendant Addie Jo Perry's First Amended Plea in Abatement, Original Answer, Special Exceptions, and Counter-Petition," in which she again asserted counterclaims for damages and attorney's fees, complaining that she had (1) lent the Lovings "money to repair teeth in the amount of $5,000" and relied on the Lovings' promises to repay her, but they never did, and (2) "paid $670.66 for a Sprint mobile telephone for Counter-Defendant" and despite promises to repay, "Counter-Defendant has refused." Addie requested actual damages as well as court costs and attorney's fees and "such

---

[4] The Lovings alleged in the alternative that Addie was liable to them on a "theory of detrimental reliance," as they had "relied to their detriment on false promises made by [the Perrys]." However, they never raised this as a separate cause of action, nor do we consider it as an independent cause of action. *See Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 138 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.) (recognizing that detrimental reliance is not a separate cause of action, but is instead merely an element of promissory estoppel).

other and further relief as [she] may be entitled to in law or in equity." Addie also included a plea in abatement, contending that because Keith was a party to the alleged contract, his estate was a necessary party to the litigation. The filing also included "special exceptions," claiming the allegations in the petition were vague and failed to provide adequate notice of the claims.[5]

### C. Addie's motion for summary judgment

In September 2023, Addie moved for a traditional and no-evidence summary judgment on the Lovings' claims. She asserted that although the Lovings' petition had been on file for six months, no trial date had been set and no discovery had taken place. Addie alleged the Lovings had no evidence that they had fulfilled their obligations under the alleged contract, as there was no evidence that they paid the amounts in full as contemplated by the contract or obtained a survey of the property; she also alleged the statute of limitations had run on their claim for breach of contract, pointing out that the Lovings' own evidence demonstrated they had paid off the amount due in November 2016, more than four years before they filed their petition.

### D. The Lovings' amended petition and response to Addie's motion

The Lovings filed an amended petition on October 17, 2023, repeating their allegations that Addie breached the 2011 contract, and further alleged—for the first time—that the parties had entered into a second contract on December 15, 2018. According to the amended petition, "[both] contracts were related to the sale of land situated in Bastrop [sic] County, Texas." The Lovings attached a copy of the second contract, which provided for the "[t]ransfer deed of trust" to the Lovings for a different property described as having a "building on top" that was "8 by 10." The second contract stated that: "Full Payment have been paid in full to Kenneth & Addie Jo Perry."

---

[5] It does not appear that the trial court ever ruled on Addie's plea in abatement or her special exceptions.

4

The Lovings alleged Addie breached both contracts, and they added a new unjust enrichment claim and a new promissory estoppel claim.

That same day, the Lovings responded to Addie's motion for summary judgment, asserting they fulfilled their obligations under both contracts but the Perrys did not.[6] In support, the Lovings attached a declaration from Ricky, asserting that the parties entered into the two contracts at issue. Ricky attached the two contracts as exhibits to his declaration, which he incorporated by reference, stating that he and Vickie performed their contractual obligations, including making all required payments, and that the Perrys had breached the contracts by failing to obtain the required surveys and failing to transfer title to them.

Ricky attached a third exhibit to his declaration, which he asserted consisted of "payment receipts and proof of payment reflecting that we performed all of our obligations and paid Defendant funds for purchase of the land." The exhibit contained hand-written paper receipts, indicating that the Lovings had given the Perrys payments of differing amounts beginning on December 10, 2011, with the last receipt ending sometime in 2014.[7] The exhibit also included the December 10, 2018 check for $15,000 from Vickie to Kenneth, which the Lovings had attached to their original petition, with the notation purportedly entered by Kenneth indicating that they had paid their first contract in full.

### E. Addie's amended motion for summary judgment

Addie then filed an amended motion seeking a no-evidence and traditional summary judgment in June 2024, again asserting that no discovery had taken place even though the case had

---

[6] The Lovings' response again mistakenly referred to the property in the agreements as located in Bastrop County rather than Lee County.

[7] The exact dates of the last three receipts are unclear, other than to reflect that they were dated some time in 2014. The receipt before the last three was dated August 14, 2014.

been on file for 26 months. In her amended motion, Addie argued that both contracts referenced in the Lovings' amended petition failed for lack of consideration; that the Lovings had no evidence to support their claim that they fulfilled their obligations under either of the two alleged contracts; and that the statute of limitations had run on all of their claims. Neither Addie's original nor her amended motion sought summary judgment on her counterclaims.

### F. The Lovings' supplemental summary judgment response

In August 2024, the Lovings filed a supplemental response to Addie's amended summary judgment motion, contending the two contracts in question were valid and they had fulfilled all of their obligations under the contracts, but Addie had breached the contracts by refusing to transfer title to the properties to them and not providing the surveys.[8]

The amended response included a new declaration from Ricky, in which he incorporated by reference the three exhibits attached to his first declaration, as well as two new exhibits labeled as Exhibits 4 and 5. Exhibit 4 purported to be "a ledger created by Kenneth Perry," which contained. . . . the title: "Receipt book: Ricky & Vickie Lovings buying 5012 E Hwy 290 Giddings Texas, double wide trailer, land, contract on 11/6/11, $400.00x84=$33,600." The ledger began with a statement acknowledging a cash receipt of $400 on December 10, 2011, and includes a list of primarily cash payments the Lovings made through December 3, 2016. At the end of this list, there is a notation stating that Vickie had given him a check for $15,000 dated November 10, 2016, which he voided because the Lovings had "overpaid" him by $20,719.00.[9] The last relevant line

---

[8] In their supplemental response, the Lovings alternatively refer to the property as being in Bastrop County and in Lee County.

[9] The list included the following totals for each year: 2012-$12,000.00; 2013-$9,900.00; 2014-$11,700.00; 2015-$10,900,00; 2016-$9819.00, for a total of total $54,319.00, with a statement that the Lovings had overpaid by $20,719.00.

in this set of transactions is: "5012 EAST HWY 290 GIDDINGS: 1ST CONTRACT ON 11-06-2011IS PAID IN FULL"

The next entry in Exhibit 4 states that Kenneth "wrote up 2nd contract on 12-15-2018 on land and shop next to 1st contract 4986 east hwy 290 giddings texas 78942." It is followed by an entry stating that a first payment of $800 in cash was received on January 6, 2017, with monthly payments being made throughout 2017 and 2018, for a total of $13,170.00 for the year of 2017, and $6,100.00 in 2018. The last entry states: "Both contracts paid in full 08-02-2018. All parties follow both contracts as written." Exhibit 4 also included a handwritten undated note allegedly written by Kenneth stating, "receipt 2014-2018 Ricky and Vickie 5012 E Hwy 290 Trailer & land paid off 2016, overpaid me $50 bought old oil can shop and land shown on map. Both paid off. They both belong to Vickie and Ricky Lovings."

Exhibit 5 consisted of handwritten receipts that Kenneth purportedly gave to the Lovings detailing the payments they allegedly made in differing amounts, beginning on December 10, 2011, and ending on August 2, 2018. Most of the receipts have the notation "5012 hwy 290 E. Giddings, TX, home & land" or variations thereof, but at least two state that the payments were for insurance and taxes.[10] The handwritten receipts appear to be the same as the ones that Ricky initially attached to his first declaration as Exhibit 3, but unlike Exhibit 3, which only included receipts through the Fall of 2014, Exhibit 5 included additional receipts through August 2, 2018.

In his declaration, Ricky averred that Kenneth had given him all of the above-described records "as part of my and my wife's purchase of the land"; that he was "familiar with how these documents were created"; that the documents were either "the original or exact duplicates of the

---

[10] Despite variations, the receipts all indicate that payments were made with reference to 5012 Highway 290 in Giddings.

original records"; and that he stores them in a "safe deposit box at [his] bank." He further averred that "[t]he records were kept in the course of regularly conducted activity related to my purchase of the land at issue in this dispute" and that it was his "regular practice . . . to preserve the records."

**G. Addie's reply and objections to the Lovings' summary judgment evidence**

On August 9, 2024, Addie filed a reply and objections to Ricky's declaration, as well as to Exhibit 4. Addie objected to Ricky's declaration on the ground that it "contain[ed] speculation and improper legal conclusions that [were] not supported by admissible evidence," including his statement that the Lovings had completed all of their obligations under the contracts but the Perrys had not. She further objected to Exhibit 4 (Kenneth's ledger) on the grounds that it was "hearsay without exception," that it lacked a "proper foundation for admissibility," and that it lacked any "indicia of reliability." She further pointed out that Kenneth had passed away, and she asserted there was no evidence in the record to support a finding that the handwritten note included in Exhibit 4 was written by him.

Addie also noted that the Lovings had not responded to her argument that the statute of limitations had run with respect to the claims alleged in their petitions. Addie pointed out that claims for breach of contract and promissory estoppel are subject to a four-year statute of limitations, and a claim for unjust enrichment is subject to a two-year statute of limitations. With respect to the 2011 contract, Addie argued that the statute began to run when the contract was allegedly paid off in November of 2016—according to the Lovings' own evidence—but that the Lovings did not file their original petition until March 25, 2022, almost six years later. With respect to the 2018 contract, Addie pointed out that the contract purported to give the Lovings title to the second property in December 2018, but the Lovings did not file their amended petition alleging a breach of the 2018 contract until October 17, 2023, almost five years later. Addie further argued

8

that because the amended petition involved the breach of a separate contract, it did not relate back to the filing date of the original petition for purposes of tolling the statute of limitations.

In addition, Addie repeated her arguments that the Lovings had not fulfilled their obligations under either contract, that she was not in breach of either contract, and that the 2018 contract lacked consideration. Finally, she raised the doctrine of "unclean hands" as an affirmative defense to the Lovings' claims, contending they did not "honestly report" the alleged sale of the property to the tax office, and that they left in place Addie's "[o]ver 65" exemption that allowed the property taxes on the property to be frozen.

### H. The trial court's rulings

The record reflects that the trial court set a hearing on Addie's amended summary judgment motion on August 13, 2024, but no record was taken of the hearing. The trial court entered a written order dated August 28, 2024, sustaining Addie's objections to Ricky's declaration and to Exhibit 4 (Kenneth's ledger). The court ruled that those two documents would not be considered as evidence in the court's analysis.

That same day, the court entered a written order granting Addie's amended summary judgment motion, without stating its reasons. The Lovings appealed from that order. On appeal, the Lovings argue (1) the trial court erred by granting Addie's objections to their summary judgment evidence, and (2) the trial court erred in granting Addie's motion for summary judgment.

## II. JURISDICTION

"Before reaching the merits of the appeal, we must first inquire into our own jurisdiction of the appeal, even if it is necessary to do so *sua sponte*." *Matter of Estate of Lindsay*, 538 S.W.3d 759, 761 (Tex. App.—El Paso 2017, no pet.); *see also Tex. Right to Life v. Van Stean*, 702 S.W.3d 348, 355 (Tex. 2024) (recognizing that courts "always have jurisdiction to determine their own

9

jurisdiction"). Subject matter jurisdiction is essential for a court to have authority to decide a case. *Estate of Lindsay*, 538 S.W.3d at 761 (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993)).

In general, a party can appeal only a final judgment, subject to certain exceptions not applicable here. *Sabre Travel Int'l, Ltd. v. Deutsche Lufthansa AG*, 567 S.W.3d 725, 730 (Tex. 2019); *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). A judgment is final when it "actually disposes of every pending claim and party or . . . it clearly unequivocally states that it finally disposes of all claims and parties, even if it does not actually do so." *In re Guardianship of Jones*, 629 S.W.3d 921, 924 (Tex. 2021) (citing *Lehmann*, 39 S.W.3d at 205). "If the judgment clearly and unequivocally states that it finally disposes of all claims and parties, the assessment is resolved in favor of finding finality, and the reviewing court cannot review the record." *Patel v. Nations Renovations, LLC*, 661 S.W.3d 151, 154 (Tex. 2023). Thus, the court must begin its inquiry by determining whether the Judgment is "clearly and unequivocally" final on its face. *Lehmann*, 39 S.W.3d at 200.

While "no magic language is required" to satisfy the clear-and-unequivocal standard, merely stating that the order is "final" or "appealable," including a Mother Hubbard clause in the order,[11] or awarding costs are not sufficient when standing alone. *Patel*, 661 S.W.3d at 155. Instead, "a trial court may express its intent to render a final judgment by describing its action as (1) final, (2) a disposition of all claims and parties, and (3) appealable." *Bella Palma, LLC*, 601 S.W.3d at 801 (citing *In re R.R.K.*, 590 S.W.3d 535, 543 (Tex. 2019)); *Interest of C.K.M.*, 709 S.W.3d 613, 617 (Tex. 2025) (explaining that no "talismanic phrases" are required to render an

---

[11] A Mother Hubbard clause is "a recitation that all relief not expressly granted is denied." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192 (Tex. 2001)

order final as long as "on its face . . . it finally disposes of all claims and parties"). "Stated differently, its language must 'leave no doubt about the court's intention' to enter a final judgment." *Interest of C.K.M.*, 709 S.W.3d at 617 (citing *Lehmann*, 39 S.W.3d at 206).

Here, the court entered a written order granting Addie's amended summary judgment motion after "having considered [the motion] and after reviewing the courts file, the evidence, if any, the applicable law, and arguments of counsel[.]" The court ordered that the Lovings take nothing in the suit and stated that its "judgment finally disposes of all claims made in the above numbered and styled cause of action and is appealable." It further states that "[a]ll costs and fees incurred in this matter are taxed against the party incurring the same." However, the order lacks a clear indication of finality on its face, as it does not state that it disposes of all parties despite "disposing of all claims." *Lehmann*, 39 S.W.3d at 192–93 (to be final, summary-judgment order must "actually dispose[ ] of all claims and parties" or "state[ ] with unmistakable clarity that it is a final judgment as to all claims *and all parties*") (emphasis added).

The order states, in the specific context of considering Addie's amended motion for traditional and no-evidence summary judgment, that the plaintiffs take nothing; and while it indicates that all claims made are disposed of, it is unclear whether those include counterclaims. *See id*. at 199–200 ("[T]he ordinary expectation that supports the presumption that a judgment rendered after a conventional trial on the merits will comprehend all claims simply does not exist when some form of judgment is rendered without such a trial."); *In re Burlington Coat Factory Warehouse of McAllen, Inc*., 167 S.W.3d 827, 829 (Tex. 2005) (recognizing same).

Accordingly, we turn to the record to determine whether the subject order is final and appealable. In her pleadings, Addie sought summary judgment on all of the Lovings' claims, including their claims for breach of contract, promissory estoppel and unjust enrichment, because,

among other things, the statute of limitation had run on all three of those claims. But in her answer to the Lovings' original petition, Addie also raised permissive counterclaims, alleging that she had lent the Lovings money that they failed to repay, and requesting attorney's fees. *See* Tex. R. Civ. P. 97 (b) (providing that "a pleading may state as a counterclaim any claim against an opposing party whether or not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim"). When, as here, the finality of an order is unclear and we must turn to the record, "if the record reveals the existence of parties or claims not mentioned in the order, the order is not final." *Lehmann*, 39 S.W.3d at 205–06.

As set forth above, the trial court's order did not mention Addie's counterclaims. Because Addie's counterclaims remain unadjudicated, and the trial court did not sever her counterclaims from the Lovings' claims against her, we conclude that the trial court's order is not a final, appealable judgment. *See Chase Manhattan Bank, N.A. v. Lindsay*, 787 S.W.2d 51, 53 (Tex. 1990) (orig. proceeding) (per curiam) (op. on reh'g) (providing that summary judgment granted as to separate parties or issues within a single cause of action is partial and interlocutory until all issues are adjudicated or ordered severed by the trial court); *see also Young v. Luxury Direct Ltd. Co.*, No. 01-20-00658-CV, 2022 WL 175360, at *1 (Tex. App.—Houston [1st Dist.] Jan. 20, 2022, no pet.) (mem. op.) (per curiam) ("Because appellant's counterclaims have not been finally disposed of and remain pending and the trial court's order does not state that it is a final judgment as to all claims and all parties, we agree with appellee that the trial court has not rendered a final judgment.") (citing *Palavan v. McCulley, Boulevard Realty LLC, and TBW Dev., LLC*, No. 01-14-00604-CV, 2015 WL 1544520, at *1–2 (Tex. App.—Houston [1st Dist.] Apr. 2, 2015, no pet.) (concluding that court lacked jurisdiction because counterclaims remained pending)).

## III. Conclusion

Because the trial court did not render a final, appealable judgment, we dismiss the appeal for lack of subject-matter jurisdiction.

LISA J. SOTO, Justice

May 13, 2026

Before Salas Mendoza, C.J., Palafox, J., Soto, J.