

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| KENNETH H. ARCHIBALD AND ARCHIBALD & ASSOCIATES, INC., | § | |
| | § | No. 08-22-00091-CV |
| Appellants, | | |
| | § | Appeal from the |
| v. | | |
| | § | 327th Judicial District Court |
| EL PASO ORTHOPEDIC SURGERY GROUP, P.A., BRETT HENDERSON, M.D., AND THE MEDICAL PROTECTIVE COMPANY, | § | of El Paso County, Texas |
| | § | (TC# 2015-DCV2669) |
| Appellees. | § | |

## MEMORANDUM OPINION

In this permissive interlocutory appeal involving an insurance dispute, we are asked to decide whether certain claims are barred by the statute of limitations. Appellants, Kenneth Archibald and Archibald & Associates, Inc., appeal a partial summary judgment in favor of Appellees, El Paso Orthopedic Surgery Group, P.A. (EPOSG), Dr. Brett Henderson, and The Medical Protective Company (MedPro). Specifically, Appellants appeal the trial court's order dismissing their affirmative defense of limitations as to all causes of action asserted by Appellees.

The trial court's order granted Appellants permission to pursue an interlocutory appeal as to nine controlling questions of law. After a thorough review of the record, we dismiss the appeal for want of jurisdiction.

## *Factual Background*

Mr. Archibald is the sole owner of Archibald & Associates Inc., an insurance agency that writes medical malpractice insurance for physicians and physician groups. Mr. Archibald has been a licensed agent with the Texas Department of Insurance since 1990. He began working with EPOSG in 1998, and since 2003, Mr. Archibald has obtained policies for EPOSG and its physicians as its sole medical malpractice insurance agent with policies underwritten by MedPro, a healthcare liability insurance provider. EPOSG's standard practice was to carry a group policy, while each physician within the group also maintained his or her own policy, which allowed EPOSG to add or cancel an individual physician's coverage without changing its group coverage whenever a physician joined or left EPOSG.

When a physician joined EPOSG, Mr. Archibald would recommend to EPOSG what type of coverage to obtain for that physician. Both occurrence-based and claims-made policies are available for medical malpractice coverage. An occurrence-based policy is one in which coverage is triggered based upon when the alleged offense occurred, regardless of when a claim is made. It differs from a claims-made policy, under which coverage is triggered based upon the date the claim is made, regardless of when the alleged underlying event occurred. If a claims-made policy terminates, the physician may choose to secure tail coverage, or extended reporting coverage, to cover liability for any later-asserted claims based on events that occurred during the term of the claims-made policy in exchange for a one-time payment to the insurance carrier. Mr. Archibald testified claims-made policies are industry standard for medical-malpractice coverage.

2

When Dr. Henderson joined EPOSG, his situation differed from the norm at EPOSG because he was joining on a part-time, possibly short-term, basis, while continuing his own practice in New Mexico, and practicing only orthopedic spinal surgery, not neurosurgery. Based on his conversation with Dr. Henderson, Mr. Archibald recommended an occurrence-based policy. EPOSG and Dr. Henderson agreed, and Dr. Henderson submitted his application for an occurrence-based policy to Archibald & Associates with an effective date of April 13, 2010.

Though Dr. Henderson's written application requested an occurrence-based policy, it is undisputed once Mr. Archibald or an Archibald & Associates employee input his application into the electronic underwriting system for submission to MedPro, it erroneously reflected a request for a claims-made policy. In other words, though Dr. Henderson and EPOSG agreed to obtain an occurrence-based policy per Mr. Archibald's recommendation, Mr. Archibald or one of his company's employees mistakenly requested a claims-made policy.

After MedPro accepted the application, Archibald & Associates issued a certificate to EPOSG for credentialing purposes reflecting Dr. Henderson's coverage and stating the limits of liability applicable to his policy; however, the certificate did not state whether the policy was claims-made or occurrence-based. Thus, at the time, Dr. Henderson, EPOSG, and Mr. Archibald all believed that Dr. Henderson had an occurrence-based policy. Mr. Archibald testified MedPro sent the policy—which would have reflected the coverage discrepancy—to EPOSG and Dr. Henderson directly in 2010.

Dr. Henderson left EPOSG on November 30, 2011. A representative from EPOSG contacted Mr. Archibald in July 2012 to ask whether EPOSG needed to secure tail coverage for Dr. Henderson. However, still believing Dr. Henderson had an occurrence-based policy, Mr. Archibald said there was no need for tail coverage since under an occurrence-based policy, Dr.

Henderson would remain insured for all events during his coverage period, regardless of when a claim may be asserted.

In June 2013, one of Dr. Henderson's EPOSG patients lodged a medical-malpractice claim against EPOSG and Dr. Henderson. Shortly after, attorney Larry Hicks accepted assignment from MedPro of EPOSG's defense in the case. Mr. Hicks contacted Mr. Archibald regarding Dr. Henderson's coverage for the claim, at which point Mr. Archibald still believed Dr. Henderson had an occurrence-based policy. However, on August 8, 2013, Mr. Archibald emailed Mr. Hicks and acknowledged Dr. Henderson in fact had a claims-made policy. Specifically, he stated:

> [W]hen Dr. Henderson was added to the policy, it was our intent to do so on a Part-Time Occurrence Basis. It appears that he was added on a Part-Time Claims Made Basis. We are continuing to look into the details on how this slipped through the cracks. With that said, I have notified the E&O carrier for Archibald & Associates of the incident. They are setting up a preliminary file. I realize time is of the essence on this. With this email, I authorize you to answer the claim on behalf of Dr. Henderson. Please send billing correspondence at this time to our office. I will need it for my E&O carrier. I will keep you totally apprised of the coverage situation. Please keep me apprised of the defense of the claim.

Mr. Hicks responded, stating he spoke to Dr. Henderson, "told him about [Mr. Archibald's] decision to handle his portion of the case" through Mr. Archibald's E&O carrier, and Dr. Henderson "seems satisfied with that plan."

Mr. Archibald also emailed Mr. Hicks's assistant on August 22, 2013, stating, "[a]s per my conversation with Larry, he is going to work on the case for Dr. Henderson as we will cover the claim." On September 6, 2013, Mr. Hicks emailed Mr. Archibald, writing:

> I am meeting with Dr. Henderson today to talk to him about the case. I have told him that you and/or your E&O carrier will cover his defense and indemnity up to whatever limits he would have had under the EPOSG policy. I suggest you communicate with him about whatever arrangements you have made.

> I spoke to Paul Rinaldi, [the MedPro Claims Manager] yesterday. As you know, I put [MedPro] on notice of Dr. Henderson's claim. Paul informed me yesterday that Med[]Pro does not have coverage for Dr. Henderson on this matter. However,

4

Med[]Pro is considering providing a courtesy defense for him because EPOSG may be vicariously liable for his negligence, if any. Nevertheless, this does not get Dr. Henderson out of the woods from an indemnity or settlement standpoint.

As you know, I cannot get involved in coverage issues for Dr. Henderson. I am happy for you and Med[]Pro to work out any arrangement you may choose concerning Dr. Henderson's coverage and, frankly, I do not need to know the details. I just need to know that a.) his legal fees will be paid, and b.) he will have indemnity money available to him if he chooses to settle or has an adverse verdict.

Let me know if this is an acceptable approach, or if you have any questions.

Though no response from Mr. Archibald appears in the record before us, Mr. Hicks testified he "confirmed [Mr. Archibald's] agreement that he and/or his E&O insurance carrier would cover Dr. Henderson's defense and indemnity up to whatever limits Dr. Henderson would have had under the proper policy."

On September 13, 2013, MedPro sent Dr. Henderson a formal declination of coverage letter based on his claims-made policy with no tail coverage.[1] Mr. Archibald reported the potential claim to Professional Liability Insurance Services, Inc. (PLIS), his E&O carrier, approximately one month later. As the patient's medical-malpractice suit proceeded, Mr. Hicks provided Mr. Archibald with periodic updates regarding the case strategy and mediation. In May 2014, after a PLIS claims specialist advised they had not secured an additional offer toward the claim's settlement, Mr. Archibald reiterated his desire "to get this disposed" and again noted when Archibald & Associates transferred Dr. Henderson's application to MedPro's online system, the "claims[-]made error occurred." In September 2014, PLIS's counsel requested the case return to mediation in hopes of reaching a global settlement, while noting that "PLIS has not extended

---

[1] The letter specifically stated MedPro was unable to provide indemnity coverage for the claim because it fell outside the dates of Dr. Henderson's coverage; however, MedPro agreed to provide a courtesy defense "with the understanding there is no indemnity coverage" under his policy.

authority for any particular amount" and the situation was "a bit unorthodox." However, in February 2015, two days before the mediation, PLIS advised it would not participate.

At the mediation—which neither PLIS nor Mr. Archibald attended—the medical-malpractice suit settled for $140,000. On April 2 and 3, 2015, Mr. Hicks requested contribution on behalf of Dr. Henderson, which Mr. Archibald and counsel for PLIS declined.

This suit followed. Mr. Archibald has since testified he did not tell Mr. Hicks, Dr. Henderson, or MedPro he would be personally liable for any money paid out by MedPro in connection with the medical-malpractice suit against Dr. Henderson and EPOSG. Instead, he claims he told Mr. Hicks and Dr. Henderson he would advance payment on Dr. Henderson's behalf "for any legal fees that he incurred to defend himself until [PLIS] got involved." Mr. Archibald maintains he also agreed to report a claim to PLIS for not procuring the occurrence-based policy he intended for Dr. Henderson. However, he states he "never agreed to provide indemnity coverage for Dr. Henderson" or "to pay any part of the settlement that [MedPro] made to settle the [medical-malpractice] lawsuit." Mr. Archibald also contends Mr. Hicks confirmed he knew the incident had been reported to PLIS and any indemnity for Dr. Henderson would come from PLIS, not Mr. Archibald personally. He clarifies he "never had to pay Dr. Henderson's legal fees because [MedPro] agreed to provide a gratis or free defense," such that Dr. Henderson never incurred any legal fees.

### *Procedural Background*

EPOSG and Dr. Henderson sued Appellants on August 11, 2015, for professional negligence, negligent misrepresentation, breach of contract (or, in the alternative, promissory estoppel), and Texas Deceptive Trade Practices Act (DTPA) violations. Appellants answered and raised several affirmative defenses, including limitations.

6

Appellants then filed a traditional and no-evidence motion for summary judgment. They sought traditional summary judgment as to the negligence and DTPA claims based on limitations and no-evidence summary judgment as to the breach of contract or promissory estoppel claims. EPOSG and Dr. Henderson responded, and on March 10, 2016, the trial court denied both the traditional and no-evidence motion.

On February 25, 2019, MedPro filed its original petition in intervention, asserting a breach of contract claim against Appellants based on Mr. Archibald's purported promise to indemnify MedPro on behalf of Dr. Henderson for up to the amount of coverage he would have had under an occurrence-based policy, as well as attorneys' fees incurred in Dr. Henderson's defense in the medical-malpractice suit. Appellants answered, again raising several affirmative defenses, including limitations. They later filed amended answers to both the original petition and petition in intervention.

On March 25, 2022, Appellants filed a motion to reconsider their traditional motion for summary judgment on limitations based on new case law. Shortly after, Appellees filed their own motion for partial summary judgment, seeking to conclusively negate Appellants' affirmative defense of limitations as to the negligence and DTPA claims. The parties each responded to the other's motion. On May 5, 2022, the trial court granted Appellees' motion, denied Appellants' motion, and thus dismissed Appellants' affirmative defense of limitations "as to all causes of action asserted by Plaintiffs and Intervenor." Specifically, the trial court stated "[a]fter considering the Motions, responses, pleadings, affidavits and other evidence on file, the Court finds that Plaintiffs'/Intervenor's Motion is well taken, and establishes as a matter of law that suit was timely filed as to all causes of action, and should therefore be GRANTED."

7

In the same order, the trial court then granted Appellants permission to pursue an interlocutory appeal, which this Court agreed to hear. The trial court's order states it "involves controlling questions of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from the orders may materially advance the ultimate termination of the litigation." It then identified the following nine issues as "controlling questions of law, as to which there is a substantial ground for difference of opinion:"

1. When does the cause of action accrue for purposes of limitations for tort claims (negligence of an insurance agent)?

2. When did the statute of limitations accrue for each Plaintiff's tort causes of action in this matter?

3. Does the legal injury rule, continuing tort doctrine, or application of estoppel principles act to toll or otherwise extend limitations as to the tort claims by Plaintiffs in this matter?

4. Were Plaintiffs' tort claims timely filed as a matter of law?

5. When does the cause of action accrue for purposes of limitations for Plaintiffs' and Intervenor's claims for breach of contract?

6. Were Plaintiffs' and Intervenor's contract claims timely filed as a matter of law?

7. When did the statute of limitations accrue for each Plaintiff's causes of action under the Texas Deceptive Trade Practices Act?

8. Did the Plaintiffs' prove as a matter of law that Defendants engaged in conduct that extends the statute of limitations under the Texas Deceptive Trade Practices Act?

9. Were Plaintiffs' causes of action under the Texas Deceptive Trade Practices Act timely filed as a matter of law?

### *Analysis*

In nine issues on appeal (which mirror the trial court order's listed controlling questions of law), Appellants contend the trial court erred in granting Appellees' motion for partial summary judgment negating their affirmative defense of limitations. Upon close review of the record, we

conclude we must dismiss this appeal for want of jurisdiction. While neither party raises this point, we must independently determine whether we have jurisdiction over an appeal even if no party contests it. *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) (per curiam). Section 51.014(d) of the Texas Civil Practice and Remedies Code permits an interlocutory appeal of an otherwise unappealable order if several requirements are met. First, the trial court must certify that the order is immediately appealable and expressly identify a controlling question of law on which there is substantial ground for disagreement. *El Paso Tool & Die Co., Inc. v. Mendez*, 593 S.W.3d 800, 805 (Tex. App.—El Paso 2019, no pet.); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d) (trial court may permit an appeal from an order that is not otherwise appealable if it involves "a controlling question of law as to which there is a substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation"); TEX. R. CIV. P. 168 (trial court's order permitting interlocutory appeal must identify requirements stated in section 51.014(d) of the Texas Civil Practice and Remedies Code). The order must also explain why an immediate appeal may materially advance the ultimate resolution of the case. *El Paso Tool & Die Co.*, 593 S.W.3d at 805 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d)).

Once the trial court has permitted the appeal from an otherwise unappealable interlocutory order, the party seeking permissive appeal has fifteen days to petition the court of appeals by "argu[ing] clearly and concisely why the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion and how an immediate appeal from the order may materially advance the ultimate termination of the litigation." TEX. R. APP. P. 28.3(c), (e)(4); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(f) (appealing party must file in the appellate court an application explaining why permissive appeal is warranted under

section 51.014(d)). The controlling issue must be solely a question of law unconstrained by procedural or factual issues. *El Paso Tool & Die, Co.*, 593 S.W.3d at 805; *see also Diamond Prods. Int'l, Inc. v. Handsel*, 142 S.W.3d 491, 494 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("The statute does not contemplate permissive appeals of summary judgments where the facts are in dispute.").

Finally, the appellate court must agree to hear the appeal, which it has discretion to accept or deny. *Sabre Travel Int'l, Ltd. v. Deutsche Lufthansa AG*, 567 S.W.3d 725, 732 (Tex. 2019). Appeals courts exercise this discretion consistent with the legislative intent behind section 51.014(d): in favor of "early, efficient resolution of determinative legal issues[.]" *Id.* However, the controlling issue must be solely a question of law unconstrained by procedural or factual issues. *El Paso Tool & Die Co.*, 593 S.W.3d at 805. Even if the two statutory requirements are satisfied, section 51.014 "grants courts vast—indeed, unfettered—discretion to accept or permit the appeal." *Indus. Specialists, LLC v. Blanchard Ref. Co. LLC*, 652 S.W.3d 11, 16 (Tex. 2022) (plurality op.).

We strictly construe section 51.014(d) because it is a narrow exception to the general rule that interlocutory orders are not immediately appealable. *Borowski v. Ayers*, 432 S.W.3d 344, 347 (Tex. App.—Waco 2013, no pet.) (citing *CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011)). Section 51.014(d) is premised on the trial court first substantively ruling on the controlling legal issue presented on appeal. *Id.* (collecting cases). "It is well settled in Texas that an order does not satisfy the first statutory requirement if the order merely identifies a controlling issue of law but fails to rule on it." *Dafashy v. Jimenez*, No. 01-17-00767-CV, 2017 WL 6001526, at *1 (Tex. App.—Houston [1st Dist.] Dec. 5, 2017, no pet.) (mem. op.) (per curiam) (collecting cases). The controlling legal question presented to the appellate court must be the same legal issue decided by the trial court; it is not enough that the issue presented on appeal and the trial court's ruling merely

concern the same general subject matter. *Orion Marine Constr., Inc. v. Cepeda*, No. 01-18-00323-CV, 2018 WL 3059756, at \*2 (Tex. App.—Houston [1st Dist.] June 21, 2018, no pet.) (mem. op.) (Bland, J.). Thus, if the trial court does not substantively rule on the controlling legal issue or issues presented in a permissive appeal, the order does not involve a controlling question of law, and section 51.014(d) does not authorize its interlocutory appeal. *Borowski*, 432 S.W.3d at 347 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d)).

Here, we do not have jurisdiction to hear the appeal because the trial court's order does not meet the requirements of section 51.014(d). Specifically, the trial court did not satisfy the first requirement of section 51.014(d) by substantively ruling on the legal issues presented on appeal. *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d)). Though the trial court's order identifies all nine questions as "controlling questions of law," it makes no substantive ruling on these nine issues nor does the record otherwise indicate the trial court's substantive ruling on each issue. Instead, the order simply states that "as a matter of law that suit was timely filed as to all causes of action," without specifying individual claims, accrual dates, or the legal theories upon which the holding rests. The order attempts to certify nine legal questions for our review, but section 51.014(d) does not contemplate using the permissive interlocutory appeal as a mechanism to present certified questions. *Int'l Bus. Machines Corp. v. Lufkin Indus., Inc.*, No. 12-20-00249-CV, 2020 WL 6788140, at \*2 (Tex. App.—Tyler Nov. 18, 2020, pet. dism'd) (mem. op.) (citing *Eagle Gun Range, Inc. v. Bancalari*, 495 S.W.3d 887, 889 (Tex. App.—Fort Worth 2016, no pet.)).

Because the trial court did not make a substantive ruling on the listed "controlling legal issues," these questions certified by the order do not involve controlling questions of law, and section 51.014(d) does not authorize us to reach them on interlocutory appeal. *Dafashy*, 2017 WL

6001526, at \*1. To the extent these questions raise unresolved legal questions, this permissive appeal is not the proper vehicle to resolve them because we are not statutorily authorized to decide controlling questions of law in the first instance. *See Orion Marine Constr.*, 2018 WL 3059756, at \*3 (concluding the same); *see also Indus. Specialists, LLC*, 652 S.W.3d at 16 ("The courts [of appeals] have no discretion to permit or accept an appeal if the two requirements [of section 51.014(d)] are not satisfied."). Without a clear ruling by the trial court on the specific legal issues presented to us to decide, any opinion we issue would necessarily be advisory. *Bancalari*, 495 S.W.3d at 889.

Further, we do not have jurisdiction because Appellants have not met what section 51.014(f) requires of the petition for permissive appeal: that they "explain[] why an appeal is warranted under Subsection (d)." TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(f); *Indus. Specialists, LLC*, 652 S.W.3d at 16 (noting that section 51.014 "implicitly charge[s] courts of appeals with the duty to consider the party's explanation"). In their petition for permissive appeal, Appellants identify the "controlling questions of law" by quoting from the trial court order authorizing this permissive appeal and stating the issue of limitations is "almost by definition[] a controlling question." They also broadly contend if we interpret the questions of law in their favor, it would result in the dismissal of claims, which they maintain would "materially advance the termination of this case." However, without a substantive ruling on the legal issues by the trial court, Appellants cannot identify a controlling question of law and therefore cannot meet that piece of the subsection (f) requirement. *See Orion Marine Constr.*, 2018 WL 3059756, at \*2 ("[A] party cannot seek to appeal from an interlocutory order on a ground or issue that differs from the basis on which the trial court ruled.").

12

For example, the parties collectively presented six different dates at which the tort claims could have accrued in their competing motions for summary judgment. The trial court did not state in its ruling which date it determined is the operative for claim-accrual purposes nor did it explain the basis for its reasoning that "as a matter of law that suit was timely filed as to all causes of action," including whether it determined any one of the several legal or equitable tolling doctrines raised by the parties applies here. Nevertheless, Appellants' petition for permissive appeal characterizes the determination of this date as a controlling question of law and invites us to resolve that question in the first instance. But we are not statutorily authorized to decide controlling questions of law in the first instance; that is the trial court's role. *See id.* at *3.

As to the breach of contract claims, Appellants' petition for permissive appeal states that "Plaintiffs/Intervenor did not move for summary judgment as to limitations on contract claims."[2] Because Appellants readily admit the trial court's order permitting interlocutory appeal embraces a question that was not before it, they cannot meet what subsection (f) requires: an explanation why (1) the appealed order involves a controlling question of law as to which there is substantial ground for difference of opinion, and (2) an immediate appeal from the trial court's order may materially advance the ultimate termination of the litigation. *See Lockhart as Tr. of Lockhart Family Bypass Tr. v. Chisos Minerals, LLC*, 621 S.W.3d 89, 99 (Tex. App.—El Paso 2021, pet. denied) (trial court is "constrained to grant affirmative relief . . . based only on grounds expressly presented in the[] summary judgment motion."). Appellants' petition similarly fails to meet the subsection (f) requirements as to the DTPA claim. Even assuming the trial court's order did involve a controlling question of law regarding the timeliness of the DTPA claim, Appellants have not

---

[2] Indeed, both parties agree that while the trial court's order stated "suit was timely filed as to all causes of action," the competing motions for summary judgment on limitations addressed only the tort and DTPA claims—not breach of contract.

explained why our review of this claim may materially advance the ultimate termination of the litigation given the remaining pending claims.

In sum, the trial court's order fails to meet the requirements of section 51.014(d). Appellants also have not provided any support for their position that the requirements of subsection (d) are met here and as such fall short of what subsection (f) requires. Because we "have no discretion to permit or accept an appeal when section 51.014(d)'s requirements are not satisfied," we dismiss the appeal for want of jurisdiction. *Indus. Specialists, LLC*, 652 S.W.3d at 26 (Busby, J., dissenting) (internal quotation marks omitted).


YVONNE T. RODRIGUEZ, Chief Justice

February 24, 2023

Before Rodriguez, C.J., Soto, J., and Ferguson, Judge
Ferguson, Judge (Sitting by Assignment)