

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

Nos. 04-22-00233-CV, 04-22-00253-CV

**3CM, LLC** d/b/a 3CM Multifamily,
Appellant

v.

Gregory **TRIMBLE** and Group of Investors,
Appellees

From the 198th Judicial District Court, Bandera County, Texas
Trial Court No. CVCD-22-0000052
Honorable M. Rex Emerson, Judge Presiding

Opinion by:  Irene Rios, Justice

Sitting:  Rebeca C. Martinez, Chief Justice
Irene Rios, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: March 29, 2023

MOTION FOR REVIEW OF FURTHER ORDER GRANTED;
REVERSED AND REMANDED IN PART;
DISMISSED FOR LACK OF JURISDICTION IN PART

In this consolidated, interlocutory appeal, appellant 3CM, LLC d/b/a 3CM Multifamily

("3CM") argues the trial court erred when it granted appellees Gregory Trimble and Group of

Investors' ("the Investors") application for a temporary injunction. 3CM also complains about the

trial court's order granting its own motion to compel arbitration. Although the trial court granted

3CM's motion to compel arbitration, 3CM argues the order granting the temporary injunction

operates as an effective denial of its motion to compel arbitration because the temporary injunction

granted the Investors relief on issues that are subject to arbitration. We reverse the trial court's temporary injunction order, dismiss for lack of jurisdiction 3CM's appeal of the trial court's order compelling arbitration, and remand the case to the trial court for further proceedings consistent with this opinion.

## BACKGROUND

3CM is a syndication sponsor who identifies an investment property to purchase, collects capital from other investors, and secures a loan for the remaining capital needed to purchase the investment property. Specifically, 3CM purchases multifamily properties such as apartment complexes. 3CM also manages the properties that it purchases as a syndication sponsor. Each person in the Group of Investors has invested in at least one of fifteen different multifamily properties purchased by 3CM.[1]

Each property 3CM sponsored was purchased by a different limited liability company bearing the name of that property.[2] It is undisputed the company agreements for each limited liability company are identical. We refer to the fifteen limited liability companies collectively as "the LLCs" and the company agreements governing the LLCs collectively as "the Company Agreements." In the Company Agreements, 3CM is listed as the manager of the LLCs, and the Investors are listed as members of the LLCs; however, the LLCs do not all have the same members. While there may be some crossover between members of some of the LLCs, it appears that each company is largely owned by different members.

---

[1] According to their verified original petition, Investors "represent the interests of over 1,200 investors" who invested "over $120 million . . . to invest in several different apartment properties."

[2] The fifteen different limited liability companies are: (1) Arroyo Square, LLC; (2) Aventine Corpus Christi, LLC; (3) Bent Tree 360, LLC; (4) Bridge Apartments 360, LLC; (5) Brooke Apartments 360, LLC; (6) Brownstone 360, LLC; (7) Carmel Manor, LLC; (8) Cielo Vista 360, LLC; (9) Harvard House Apartments, LLC; (10) Indigo Apartments, LLC; (11) Latitude Apartments, LLC; (12) Magnolia Greens, LLC; (13) Monterra 360, LLC; (14) Park on Paint Rock, LLC; and (15) The Retreat 360, LLC. The Investors' verified original petition in intervention also lists Riverway Apartments 360, LLC; however, it appears there were not enough votes among its members to remove 3CM as its manager and it is not listed as one of the companies affected by the temporary injunction.

At some point in 2021, the Investors began to suspect 3CM was impermissibly transferring funds to itself and between the different limited liability companies. The Investors also began to suspect the occupancy reports sent to investors contained either false or misleading information to inflate the occupancy rates of the multifamily properties, and 3CM was neglecting some of the properties. Finally, the Investors suspected 3CM was paying a contractor associated with an employee of 3CM for work that was not performed by that contractor.[3] According to the Investors, 3CM "refused to provide basic financial information to [the Investors], in direct violation of the [Company Agreements] at issue."

The Company Agreements provide a process whereby investors in the respective companies can remove 3CM as the manager and substitute a new manager in its place. Section 8.2 of the Company Agreements states:

> Prior to initiating a removal action per this Article for Good Cause, the Members (other than the Manager or Affiliates of the Manager) representing seventy-five (75%) of the Percentage Interests[4] shall issue a Notice to Perform to the Manager in accordance with the notice provision in Article 15.1 hereof. Such Notice to Perform shall describe the matters of concern to the Members. If the Manager fails to respond to the concerns or demands contained in such Notice to Perform within sixty (60) days, to the satisfaction of the Members then;

> Upon the affirmative vote of seventy-five (75%) of the Percentage Interests (other than those belonging to the Manager or Affiliates of the Manager), the Manager may be immediately removed, temporarily or permanently, for Good Cause as determined by: (a) the Members holding the requisite Percentage Interests, or (b) by an arbitrator or judge per Article 13.5.4. *Note, however, that any resignation or removal of the Manager may require approval of a lender or substitution of a loan guarantor if any loan was conditioned on the qualifications of the Manager.*

---

[3] It is unclear from the record whether the Investors suspected the issues with the contractor before or after litigation commenced.

[4] The Company Agreements define "Percentage Interests" as "the percentage of ownership interests of the Members, other than any Economic Interest . . . ." "Economic Interest" is defined as "a Person's right to share in the income, gains, losses, deductions, credit, or similar items of, and to receive Distributions from, the Company, but does not include any other rights of a Member, including without limitation, the right to vote or to participate in management, and any right to information concerning the business and affairs of the Company."

Article 13 of the Company Agreements provides an internal dispute resolution procedure ("the IDR Procedure") to resolve disputes arising between the members and the manager. The IDR Procedure lists a series of steps the aggrieved party must take to resolve a dispute. The steps include informal negotiations and at least three "face-to-face mediation sessions." Section 13.5 of the Company Agreements states: "Any [d]ispute that remains unresolved after good faith negotiation[s] and three (3) failed mediation sessions shall be settled by binding arbitration."

However, section 8.6 of the Company Agreements expressly provides:

> Nothing in Article 13 (i.e., the Internal Dispute Resolution Procedure) shall prevent any Manager from being immediately removed pursuant to the procedures described in this Article. However, the removed Manager may request application of the Internal Dispute Resolution Procedure (as described in Article 13) to settle disputes related to possible reinstatement or a determination of the amount(s) of Distributable Cash or Fees to which the removed Manager may be entitled.

In December 2021, Notices to Perform were sent to 3CM from members comprising the requisite Percentage Interests in each of the LLCs.[5] Among other things, the Notices to Perform requested 3CM provide the Investors with documents showing the financial state of the LLCs and physical state of the properties and requested that 3CM respond to questions regarding actions taken on behalf of the respective LLC that sent the notice. In its brief, 3CM concedes it "was not able to fully comply with all of the requests within the [sixty]-day deadlines." After 3CM failed to satisfactorily comply with the Notices to Perform, the Investors sent 3CM a letter stating the members had voted to remove 3CM as the manager of the respective LLCs.

On February 25, 2022, 3CM filed suit against the LLCs seeking, among other things, declarations that: (1) the Company Agreements contain valid and enforceable arbitration agreements; (2) any dispute between 3CM and the members of the LLCs can be voluntarily submitted to arbitration or compelled to arbitration by a court of competent jurisdiction;

---

[5] The various Notices to Perform are dated between December 13, 2021 and December 23, 2021.

(3) members cannot file litigation to obtain injunctive relief or emergency relief from a court of law without unanimous consent of the parties to any dispute arising from or related to the Company Agreements; and (4) members may obtain relief, including emergency relief or injunctive relief, exclusively from the American Arbitration Association ("AAA") by following the IDR procedure when there is not unanimous consent of the parties to the dispute to file litigation in lieu of AAA mediation and/or arbitration.

Because 3CM sued the LLCs, and not the members seeking 3CM's removal, the Investors intervened. In their petition, the Investors sued 3CM for breach of contract, breach of fiduciary duty, and for declaratory judgment. The Investors alleged the Company Agreements contain a carve-out provision excluding the process to remove a manager from mandatory arbitration. Therefore, the Investors sought a declaration "that the investor members have the right to remove [3CM] as managing member immediately, regardless of [3CM's] invocation of [alternative dispute resolution] procedures." The Investors also sought injunctive relief to enforce their removal of 3CM as manager and to immediately transition management to their chosen new manager.

On March 10, 2022, 3CM filed a motion to compel arbitration claiming the parties' disputes fall within the scope of the arbitration agreement. 3CM also claimed the parties agreed to seek emergency relief through the AAA rather than injunctive relief in the courts. Finally, 3CM asserted the Investors did not fully comply with the procedures to remove 3CM as manager and argued compliance with the removal procedures is an issue for the arbitrator to resolve.

On April 1, 2022, the trial court held a hearing on 3CM's motion to compel arbitration and the Investors' application for a temporary restraining order seeking to give effect to their purported removal of 3CM as manager of the LLCs. The trial court granted 3CM's motion to compel arbitration and the Investors' application for a temporary restraining order. On April 6, 2022, the trial court signed an amended order granting 3CM's motion to compel arbitration. The amended

order excluded issues raised in the Investors' application for a temporary restraining order from arbitration. On April 21, 2022, 3CM filed a notice of interlocutory appeal attempting to appeal the trial court's order granting 3CM's motion to compel arbitration.

On April 11, 2022 and April 25, 2022, the trial court held a hearing on the Investors' application for a temporary injunction. On April 25, 2022, the trial court granted the Investors' application for a temporary injunction. On April 29, 2022, 3CM filed a notice of interlocutory appeal to appeal the trial court's order granting the Investors' application for temporary injunction.

Following a hearing, the trial court amended its temporary injunction on October 18, 2022. 3CM filed a motion for review of further order in this court requesting we review the first amended temporary injunction order. *See* TEX. R. APP. P. 29.6 ("While an appeal from an interlocutory order is pending, on a party's own motion or on the appellate court's own initiative, the appellate court may review . . . a further appealable interlocutory order concerning the same subject matter . . . ."). We grant 3CM's motion for review of further order.

The first amended temporary injunction ordered 3CM to:

1. Take all actions needed to accomplish the removal of [3CM] as the managing member of the [LLCs] and the activation of the duly elected new manager for each respective [LLC] as per the Company Agreement as the new manager (including the provision of all records, documents, access to bank accounts, and items necessary for management of the [LLCs]) pursuant to Section 8.2 of the Company Agreements . . . .

2. Refrain from, cease, and desist any actions to hinder or delay lender approval for the removal of [3CM] as the managing member of the [LLCs].

3. Provide [the Investors'] designated representative with access to the [LLCs] bank accounts, pursuant to Sections 8.2 and 10.2 of the Company Agreements, within 48 hours of this order, not to include signature authority.

4. Provide [the Investors'] designated manager or representative with all bank statements, access to "ResMan"[6] records for all reports on each of the [LLCs], and all documents related to capital expenditures for each [LLC] since

---

[6] "ResMan" is a multifamily property management software.

acquisition pursuant to Sections 8.2 and 10.2 of the Company Agreements within 48 hours of this order.

5. Provide duly elected new manager with full access to include signature authority to [the respective LLC's] bank accounts within 48 hours of approval of new manager by [the respective LLC's] lender.

6. Without written agreement of the parties, [r]efrain from, cease, and desist conducting the sale of any properties owned by any of the [LLCs] or any activity consistent with the sale of any property (i.e. accepting letters of intent, signing residential sale and purchase agreements, allowing due-diligence reviews by potential buyers, or entering into any sale-related agreements).

7. Without written agreement of the parties, [r]efrain from, cease, and desist providing any distributions to members until the transition to Curtis Haines as manager has been completed pursuant to Section 8.2 of the Company Agreements.

8. Refrain from, cease, and desist making disbursements, money transfers, and capital expenditures on the properties of any of the [LLCs], except for those necessary to pay usual and customary maintenance bills and payroll in the ordinary course of business of the [LLCs].

Rather than setting a date for trial on the merits with respect to the ultimate relief sought, the trial court's first amended temporary injunction order stated:

> IT IS FURTHER ORDERED that all claims, counterclaims, and interventions in this case are compelled to arbitration for trial on the merits on a date certain to be determined by the assigned arbitrator with respect to the ultimate relief sought by [the Investors] and the same are hereby ABATED in this Court pending the resolution of such arbitration, pursuant to Texas Rule of Civil Procedure 683. Provided, however, that this Temporary Injunction Order shall remain in force during the pendency of any arbitration and that this Court retains jurisdiction and authority to enforce the terms of this Temporary Injunction.

On 3CM's unopposed motion, we consolidated these two interlocutory appeals.

## DISCUSSION

3CM argues the trial court erred when it granted the temporary injunction because: (1) the Investors' failed to establish a probable right to recovery; and (2) the temporary injunction is defective on its face. 3CM also argues the trial court's first amended temporary injunction order "effectively moots its arbitration order" and amounts to a denial of its motion to compel arbitration

because the first amended temporary injunction order grants relief on the removal issue that 3CM claims to be reserved for the arbitrator.

## TEMPORARY INJUNCTION

The trial court granted the Investors a temporary injunction that facilitated the removal of 3CM as manager of the LLCs and required 3CM to cooperate with the installation of a new manager. 3CM argues the temporary injunction is defective because it: (1) provides an impermissible advisory opinion; (2) grants different relief than the relief sought in the Investors' application; (3) alters the status quo; (4) is too indefinite and uncertain to be enforced; (5) does not set a trial date; and (6) sets an inadequate bond to protect 3CM's interests.

Rule 683 of the Texas Rules of Civil Procedure "provides that '[e]very order granting a temporary injunction shall include an order setting the cause for trial on the merits with respect to the ultimate relief sought.'" *In re Garza*, 126 S.W.3d 268, 271 (Tex. App.—San Antonio 2003, orig. proceeding) (alteration in original) (quoting TEX. R. CIV. P. 683); *see also City of Floresville v. Gonzalez-Dippel*, No. 04-20-00070-CV, 2020 WL 4606902, at *5 (Tex. App.—San Antonio Aug. 12, 2020, pet. denied) (mem. op.) ("A temporary injunction must order an applicant to post a bond, set the bond amount, and set a trial date."). "The Texas Supreme Court has stated that the requirements of [R]ule 683 are mandatory, and 'an order granting a temporary injunction that does not meet them is subject to being declared void and dissolved.'" *Garza*, 126 S.W.3d at 271 (quoting *Qwest Comm. Corp. v. AT & T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000)). We have held this to mean "that the failure to meet the requirements of [R]ule 683 renders the injunction order fatally defective and void . . . ." *EOG Res., Inc. v. Gutierrez*, 75 S.W.3d 50, 52–53 (Tex. App.—San Antonio 2002, no pet.) (internal quotation marks omitted).

Here, the trial court's first amended temporary injunction order does not comply with the mandatory requirements of Rule 683 because it fails to set a trial date. Instead, it compelled "all

claims, counterclaims, and interventions" to arbitration "for trial on the merits on a date certain to be determined by the assigned arbitrator with respect to the ultimate relief sought by [the Investors] . . . ." Because the trial court failed to comply with the mandatory requirements of Rule 683, the first amended temporary injunction order is void. *See Garza*, 126 S.W.3d at 273 (holding, under supreme court precedent, a temporary injunction that fails to comply with Rule 683 is void (citing *Qwest*, 24 S.W.3d at 337)); *see also McCurry v. Smith*, No. 14-10-00722-CV, 2011 WL 824882, at *1 (Tex. App.—Houston [14th Dist.] Mar. 10, 2011, no pet.) (mem. op.) (holding a temporary injunction that "ordered that a final trial on the merits in this case shall be set[]" fails to set a trial date and is therefore void).

The Investors argue the trial court was not required to set the cause for trial in its first amended temporary injunction order because the trial court compelled the entire matter to arbitration. For support, the Investors cite *Senter Invs., L.L.C. v. Veerjee*, 358 S.W.3d 841 (Tex. App.—Dallas 2012, no pet.). However, *Senter* is distinguishable from the case at bar.

In *Senter*, the appellees entered into a lease agreement to lease commercial property from the appellants. *Id.* at 843. The lease agreement gave the appellees "a right of first offer to purchase the property in the event [the appellant] agreed to sell the property to a third party." *Id.* The lease agreement also contained an arbitration provision. *Id.* The appellees filed suit against the appellants for declaratory judgment, breach of contract, and fraud after the appellant entered "into a contract to sell the property to a third party without recognizing [the appellees'] right of first offer." *Id.* The appellees also sought injunctive relief to prevent the appellant from selling the property. *Id.* The trial court granted the appellant's motion to compel arbitration, but also issued a temporary injunction preventing the appellant from selling the property to anyone other than the appellees while the case was pending in arbitration. *Id.* The temporary injunction order did not set the case for trial on the merits. *Id.*

Section 171.086 of the Texas Civil Practice and Remedies Code authorizes a trial court to enter an order "in support of arbitration" that "restrain[s] or enjoin[s]: (A) the destruction of all or an essential part of the subject matter of the controversy; or (B) the destruction or alteration of books, records, documents, or other evidence needed for the arbitration[.]" TEX. CIV. PRAC. & REM. CODE ANN. § 171.086(a)(3). The *Senter* court determined, pursuant to section 171.086(a)(3), the trial court permissibly entered a temporary injunction preventing the sale of the property even though the entire matter had been compelled to arbitration. *Senter*, 358 S.W.3d at 845. The *Senter* court held the trial court's injunction order fit squarely within section 171.086(a)(3) because it would have enjoined the appellant from selling the property. *Id.* The sale of the property would have resulted in the destruction of the subject matter of the controversy, i.e., the appellees' "right of first offer" to purchase the property. *Id.* at 845–46.

Because the entire case was properly compelled to arbitration—and the trial court acted within its authority to enter the temporary injunction—the *Senter* court concluded that, under these circumstances, the trial court's failure to include a trial setting in the temporary injunction order did not void the temporary injunction. *Id.* The *Senter* court reasoned:

> Once [the appellant] decided to invoke the arbitration provision and the trial court compelled arbitration, the trial proceedings were governed by the [Texas Arbitration Act ("the TAA")] as well as the rules of civil procedure. Under the TAA, the trial court was required to stay the trial proceedings pending arbitration, subject to its jurisdiction to grant orders under section 171.086 [of the Texas Civil Practice and Remedies Code], including an injunction.

> The specific provisions of the TAA in this circumstance control over the rules of civil procedure; therefore, the temporary injunction order properly abated the trial court proceedings. Any trial setting would be abated pending the resolution of the arbitration proceeding and would serve little purpose. Because the TAA requires—and the temporary injunction expressly ordered—a stay of the case pending arbitration, the temporary injunction's failure to include an order setting the case for trial does not render it void.

*Id.* According to the *Senter* court, a temporary injunction that is entered pursuant to section 171.086 for issues that are subject to arbitration may not be void when it fails to include a trial setting. *Id.* Because the case at bar is distinguishable, we need not address whether we agree with the *Senter* court's reasoning.

Here, the trial court's first amended temporary injunction order goes much further than restraining or enjoining the destruction of all or an essential part of the subject matter of the controversy, or the destruction or alteration of books, records, documents, or other evidence needed for the arbitration. Instead, the trial court's first amended temporary injunction ordered the removal of 3CM as the manager of the LLCs and required 3CM to facilitate the installation of the Investors' new, chosen manager for each respective LLC during the pendency of the case. Essentially, the trial court granted the Investors the ultimate relief they sought, albeit temporarily, while the case remained pending.

Moreover, in its first amended temporary injunction order, the trial court concluded the evidence showed that, "while the Company Agreements have an alternative dispute resolution provision in Section 13, Section 8.6 of the Company Agreements states that nothing in that provision 'shall prevent any Manager from being immediately removed pursuant to the procedures described in [Section 8.2].'" This conclusion indicates the trial court believed the claims in the Investors' petition in intervention seeking to remove 3CM as manager were expressly excepted from mandatory arbitration. While we do not comment on the merits of the trial court's conclusion—if this were true—the issues regarding removal that were carved out of the arbitration clause would eventually need to be tried. *See Univ. Interscholastic League v. Hatten*, No. 03-03-00691-CV, 2004 WL 792328, at *2 (Tex. App.—Austin Apr. 15, 2004, no pet.) (mem. op.) ("[A reviewing court] may neither substitute its judgment for that of the trial court nor consider the merits of the lawsuit."). As such, it was error for the trial court to issue a temporary injunction on

these issues without setting a date for trial on the merits with respect to the ultimate relief sought. *See* Tex. Civ. R. P 683; *Gutierrez*, 75 S.W.3d at 53 (stating "[t]he purpose of a temporary injunction is to preserve the status quo of the subject matter of the suit, pending a final trial on the merits of the case[,]" and a temporary injunction must include a trial date "to prevent the temporary injunction from effectively becoming permanent without a trial.").

Because the trial court did not comply with the mandatory requirements of Rule 683 of the Texas Rules of Civil Procedure, the first amended temporary injunction order is void. Accordingly, we sustain 3CM's issue regarding the first amended temporary injunction order.

### ARBITRATION

3CM appealed the trial court's order granting its own motion to compel arbitration arguing the trial court's first amended temporary injunction order operates as an effective denial of its motion to compel arbitration because the temporary injunction granted the Investors relief on issues that are subject to arbitration. Because we reverse the trial court's first amended temporary injunction order, 3CM's argument—that its motion to compel arbitration was effectively denied—is moot.

We strictly construe statutes that grant review of interlocutory orders because they create a narrow exception to the general rule that only final judgments are appealable. *Sabre Travel Int'l, Ltd. v. Deutsche Lufthansa AG*, 567 S.W.3d 725, 736 (Tex. 2019). "An order compelling arbitration under the Texas or Federal Arbitration Acts is an unappealable interlocutory order."[7] *H2O Plumbing, Inc. v. Capital Indus., Inc.*, No. 04-03-00136-CV, 2003 WL 21217455, at *1 (Tex. App.—San Antonio May 28, 2003, no pet.) (mem. op.). The Texas Arbitration Act "is one-sided,

---

[7] The Company Agreements do not specify whether they are governed by the Texas Arbitration Act or the Federal Arbitration Act. We need not address which Act controls because 3CM is not entitled to appeal the order granting its motion to compel arbitration under either Act.

allowing interlocutory appeals solely from orders that deny arbitration." *Chambers v. O'Quinn*, 242 S.W.3d 30, 31 (Tex. 2007); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a) (omitting orders granting a motion to compel arbitration from the list of appealable orders relating to arbitration). "Similarly, the Federal Arbitration Act . . . makes no provision for an interlocutory appeal from an order compelling arbitration." *Chambers*, 242 S.W.3d at 31; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 ("In a matter subject to the Federal Arbitration Act (9 U.S.C. Section 1 et seq.), a person may take an appeal or writ of error to the court of appeals from the judgment or interlocutory order of a district court . . . under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. Section 16."); 9 U.S.C. § 16(b)(3) ("[A]n appeal may not be taken from an interlocutory order . . . compelling arbitration . . . .").

Accordingly, we dismiss for lack of jurisdiction 3CM's appeal of the trial court's order compelling arbitration.

## CONCLUSION

3CM's motion for review of further order requesting we review the first amended temporary injunction order is granted. Because the trial court's First Amended Order Granting Intervenor Group of Investors' Application for Temporary Injunction does not conform to Rule 683 of the Texas Rules of Civil Procedure, we hold the injunction order is void. We reverse the trial court's first amended temporary injunction order, and order it be dissolved in its entirety. *See Gutierrez*, 75 S.W.3d at 53. 3CM's interlocutory appeal attempting to appeal the trial court's order compelling arbitration is dismissed for lack of jurisdiction. The cause is remanded to the trial court for further proceedings consistent with this opinion.

Irene Rios, Justice