# NO. 12-24-00056-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ACCESSDIRECT- A PREFERRED PROVIDER NETWORK, INC., AHS EAST TEXAS HEALTH SYSTEM, LLC, ARDENT HEALTH SERVICES GROUP HEALTH PLAN, CAVENDER STORES, LTD., CAVENDER STORES LTD. EMPLOYEE BENEFIT PLAN, HEALTHFIRST TPA, INC., CITY OF TYLER, CITY OF TYLER MEDICAL PLAN, TYLER INDEPENDENT SCHOOL DISTRICT, TYLER INDEPENDENT SCHOOL DISTRICT MEDICAL BENEFIT PLAN, APPELLANTS* | § | *APPEAL FROM THE 114TH* |
| | | |
| | § | *JUDICIAL DISTRICT COURT* |
| *V.* | | |
| *RCG EAST TEXAS LLP AND RENAL CARE GROUP TEXAS, INC., APPELLEES* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Ardent Health Services Group Health Plan and AHS East Texas Health System, LLC (AHS Appellants), Cavender Stores, Ltd. and Cavender Stores Ltd. Employee Benefit Plan (Cavender Appellants), and HealthFirst TPA, Inc. and AccessDirect-A Preferred Provider Network, Inc. (Administrator Appellants), collectively Appellants, filed a petition for permissive appeal. We deny the petition.

## BACKGROUND

Appellees Renal Care Group Texas, Inc. and RCG East Texas LLP sued Appellants, as well as the City of Tyler Medical Plan, City of Tyler, Tyler Independent School District Medical

Benefit Plan, and the Tyler Independent School District (Tyler parties), alleging various causes of action, including breach of contract, unjust enrichment, promissory estoppel, and declaratory relief, seeking to "recover the contractual payments to which they are entitled and to obtain a declaratory judgment requiring that the network rate be paid for all currently treating and future patients covered by the AccessDirect network contract."[1]  HealthFirst and AccessDirect filed pleas to the jurisdiction and subsequently amended said pleas, and Appellants filed a joint plea to the jurisdiction and alternative motion for summary judgment on ERISA (Employee Retirement Income Security Act) preemption.  On February 9, 2024, the trial court denied the joint plea and Administrator Appellants' pleas, without stating a basis for the ruling.  Appellants filed motions for permission to appeal the denial of their various pleas and modification of the trial court's orders, which the trial court granted.  In doing so, the trial court amended his orders to grant permission to appeal.[2]  Appellants also filed a request for findings of fact and conclusions of law, on which the trial court did not rule.  This proceeding followed.

## APPLICABLE LAW

In a civil action, the trial court may, by written order, permit an appeal from an order that is not otherwise appealable if: (1) the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion; and (2) an immediate appeal from the order may materially advance the ultimate termination of the litigation. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d) (West Supp. 2023).  The "permission must identify the controlling question of law as to which there is a substantial ground for difference of opinion, and *must state why* an immediate appeal may materially advance the ultimate termination of the litigation." TEX. R. CIV. P. 168 (emphasis added).  To invoke an appellate court's permissive-appeal jurisdiction, the "trial court must make a substantive ruling on the controlling legal issue being appealed so that the legal issue presented to this court is the same legal issue determined by the trial court." *Eagle Gun Range, Inc. v. Bancalari*, 495 S.W.3d 887, 889 (Tex. App.—Fort Worth 2016, no pet.).  It matters not that the trial court "attempts to identify the controlling issue

---

[1] The trial court also denied the Tyler parties' plea to the jurisdiction.  The Tyler parties filed an interlocutory appeal from the denial of their plea to the jurisdiction, which is pending before this Court in appellate cause number 12-24-00032-CV.

[2] Permission must be stated in the order to be appealed. TEX. R. CIV. P. 168.  But an order previously issued may be amended to include such permission. *Id*.

if the order does not show that the trial court made a substantive ruling on that controlling question of law." *Id*. The trial court's order "cannot involve a controlling question of law until the trial court itself has made a substantive ruling on the controlling legal issue in the order." *Id*.

ANALYSIS

In its order granting Appellants' motion for permission to appeal, the trial court states that they are "permitted to appeal … the following controlling questions of law as to which there is a substantial ground for difference of opinion:"

> 1. Can a unified network agreement be formed by multiple contracts signed by different parties binding all parties to the terms of an agreement they have not signed without an express written commitment to be so bound?
> 2. Do state-law claims which assert entitlement to payments higher than the maximum allowable benefits in an ERISA plan address areas of exclusive federal concern and affect the relationship between traditional ERISA entities so that they are conflict preempted under ERISA?

The trial court found that "resolution of these questions dramatically affects the right of the Plaintiffs to proceed with their claims and thus dramatically affects the possibility of recovery through litigation. As such, resolution of these questions may materially accelerate the termination of this litigation." The order granting Administrator Appellants' motion contains virtually identical language, but only grants permission to appeal the following question:

> Are administrators of health benefit plans with no financial interest in whether a claim is paid or denied, entitled to the same immunity as the governmental entities and their benefit plans?[3]

These orders merely deny the pleas to the jurisdiction and identify issues of law. *See generally Mellon Real Estate, Inc. v. Gomez*, No. 01-23-00611-CV, 2023 WL 8262778, at \*2 (Tex. App.—Houston [1st Dist.] Nov. 30, 2023, no pet.) (per curiam) (mem. op.) (denial of summary judgment motion is not a substantive ruling on controlling questions of law). The trial court states that resolution of the questions dramatically affects the right of the Plaintiffs to proceed with their claims and thus dramatically affects the possibility of recovery through litigation but offers no explanation as to how or why. *See* TEX. R. CIV. P. 168. The orders set forth no substantive ruling on any of the issues identified therein.

---

[3] The trial court previously signed virtually identical orders on March 5, 2024.

3

But Appellants maintain that "[l]ack of 'substantive ruling' in the trial court's order does not impact the Court's ability to resolve the issues presented by this request for permissive appeal." Citing *Sabre Travel International, Ltd. v. Deutsche Lufthansa AG*, 567 S.W.3d 725 (Tex. 2019), they maintain that the "requirements for an appellate court's jurisdiction are satisfied when 'the trial court certifies an interlocutory appeal,' because that is all the statute requires." In *Sabre*, the trial court denied a Rule 91a motion to dismiss in which Sabre argued that the federal Airline Deregulation Act (ADA) preempts claims for tortious interference with contract. *Sabre Travel*, 567 S.W.3d at 727, 728-29. But the trial court certified this legal question, stating that the "applicable Texas case law, while persuasive, 'is factually different in ways which could be construed to make it distinguishable as controlling authority' regarding whether the ADA preempts tortious interference claims by airlines, and that 'an immediate appeal may materially advance the termination of litigation.'" *Id*. at 729. The trial court also "noted that because holdings from other jurisdictions concluded that ADA preemption applies to claims against GDSs [Global Distribution Systems], the question 'is ripe for consideration, especially from the Second Court of Appeals which authored the *Frequent Flyer Depot* opinion and, ultimately, the Texas Supreme Court.'" *Id*. The appellate court denied the permissive appeal. *Id*. The Texas Supreme Court held as follows:

> …the trial court certified an interlocutory appeal under section 51.014(d), but the court of appeals exercised its discretion—as it is entitled to do—to decline acceptance of the appeal, citing authority for strictly construing the interlocutory appeals statute. Under the plain language of section 51.014(d) and (f), we cannot say that the court of appeals abused its discretion.
>
> We do caution, however, that while courts of appeals have discretion to deny acceptance of permissive interlocutory appeals, the Legislature in its enactment of section 51.014(d) and (f) has recognized the benefit of appellate courts accepting such appeals when the threshold for an exception to the final judgment rule is met. When courts of appeals accept such permissive appeals, parties and the courts can be spared the inevitable inefficiencies of the final judgment rule in favor of early, efficient resolution of controlling, uncertain issues of law that are important to the outcome of the litigation. Indeed, the Legislature enacted section 51.014 to provide "for the efficient resolution of certain civil matters in certain Texas courts" and to "make the civil justice system more accessible, more efficient, and less costly to all Texans while reducing the overall costs of the civil justice system to all taxpayers." If all courts of appeals were to exercise their discretion to deny permissive interlocutory appeals certified under section 51.014(d), the legislative intent favoring early, efficient resolution of determinative legal issues in such cases would be thwarted. Just because courts of appeals can decline to accept permissive interlocutory appeals does not mean they should; in fact, in many instances, courts of appeals should do exactly what the Legislature has authorized them to do—accept permissive interlocutory appeals and address the merits of the legal issues certified.

4

*Id*. at 732 (internal citations omitted). When addressing its own jurisdiction to hear the interlocutory appeal, the Court explained, "Under the plain language of the statute, the jurisdictional predicate for review in this Court is satisfied when the trial court certifies an interlocutory appeal under section 51.014(d) because section 51.014(d) requires only the *trial court's permission* to appeal." *Id*. at 733 (emphasis original). The Court further explained, "If the trial court concludes that the threshold requirements are satisfied and certifies the interlocutory order according to section 51.014(d), it 'permits an appeal' from the order, and this Court's jurisdiction is then proper under section 22.225(d) regardless of how the court of appeals exercises its discretion over the permissive appeal." *Id*. The Texas Supreme Court has since clarified that its "warning in *Sabre Travel* was issued to 'caution,' not to command." *Indus. Specialists, LLC v. Blanchard Refining Co., LLC*, 652 S.W.3d 11, 18 (Tex. 2022) (concluding appellate court did not abuse discretion by refusing to accept permissive interlocutory appeal). The Court held that "section 51.014(f) permits Texas courts of appeals to accept a permissive interlocutory appeal when the two requirements of section 51.014(d) are met, but it grants the courts discretion to reject the appeal even when the requirements are met." *Id*. at 21.

*Sabre Travel* focused on Section 51.014 of the civil practice and remedies code, which provides that the trial court may, by written order, permit an appeal from an order that is not otherwise appealable if: (1) the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion; and (2) an immediate appeal from the order may materially advance the ultimate termination of the litigation. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d). Thus, as the Texas Supreme Court explained, an appellate court has jurisdiction once the trial court certifies an interlocutory appeal under Section 51.014(d) because that permission to appeal is all that Section 51.014(d) requires. *See Sabre Travel*, 567 S.W.3d at 733. But Rule of Civil Procedure 168 governs the *content* of the trial court's order. Rule 168 provides that the trial court's permission "*must* state *why* an immediate appeal may materially advance the ultimate termination of the litigation." TEX. R. CIV. P. 168 (emphasis added); *see Indus. Specialists*, 652 S.W.3d at 14-15 (noting that in 2011, Texas Supreme Court enacted new procedural rules to accommodate permissive-appeal exception, including Rule 168, "requiring that trial-court orders authorizing permissive appeals 'identify the controlling question of law as to which there is a substantial ground for difference of opinion' and 'state why an immediate appeal may materially advance the ultimate termination of the

litigation'"). Here, the trial courts' orders do not state why an immediate appeal may materially advance the ultimate termination of the litigation. *See Traylor v. Lane*, No. 06-23-00030-CV, 2023 WL 3262954, at \*2-3 (Tex. App.—Texarkana May 5, 2023, pet. denied) (mem. op.) (denying petition for permissive appeal because trial court order failed to comply with Rule 168, including requirement that order "state why an immediate appeal may materially advance the ultimate termination of litigation."); *see also Feagan v. Wilson*, No. 11-21-00032-CV, 2021 WL 1134804, at \*1-2 (Tex. App.—Eastland Mar. 25, 2021, no pet.) (mem. op.); *Patel v. Nations Renovations, LLC*, No. 02-21-00031-CV, 2021 WL 832719, at \*2 (Tex. App.—Fort Worth Mar. 4, 2021, no pet.) (per curiam) (mem. op.); *Int'l Business Machines Corp. v. Lufkin Indus., Inc.*, No. 12-20-00249-CV, 2020 WL 6788140, at \*3 (Tex. App.—Tyler Nov. 18, 2020, pet. dism'd) (per curiam) (mem. op.).

Nevertheless, Appellants assert that the substance of the trial court's rulings is clear from the face of the record, specifically, their jurisdictional pleas and the responses thereto. Citing the trial court's orders denying the pleas and granting permissive appeal on certain issues, they maintain that the trial court resolved these questions in Appellees' favor and these questions were certified for appeal.[4] They further argue that this is not a case in which they "asserted a litany of unrelated legal theories in their motions to the trial court, and then had several unrelated legal questions certified for appeal." *See generally McCroskey v. Happy State Bank*, No. 07-14-00027-CV, 2014 WL 869577, at \*1 & n.2 (Tex. App.—Amarillo Feb. 28, 2014, no pet.) (dismissing permissive appeal where trial court did not substantively rule on eight multi-faceted questions). Appellants maintain that "the record clearly indicates the substantive rulings of the trial court on each of the certified questions of law. This is sufficient." *See generally Int'l Business Machines Corp.*, 2020 WL 6788140, at \*3 (order granting permission to appeal set forth no substantive ruling on any of the three issues identified therein; nor did the record otherwise indicate trial court's substantive ruling on each issue).

---

[4] According to Appellants, the jurisdictional evidence is undisputed, and the trial court ruled on the evidence as a question of law. *See generally Tex. Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004) ("if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law"). Appellees take the position that the evidence is not undisputed. *See Diamond Prods. Int'l, Inc. v. Handsel*, 142 S.W.3d 491, 494 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (statute does not contemplate permissive appeals when facts are in dispute). Regardless, the record must still reflect substantive rulings on the controlling legal issues.

The trial court's orders reflect rulings on the second amended pleas to the jurisdiction filed by each of the Administrator Appellants and the joint plea to the jurisdiction.[5] In its second amended plea to the jurisdiction, HealthFirst asserted governmental immunity, arguing that Appellees failed to plead facts affirmatively demonstrating the trial court's jurisdiction over their governmental claims and the undisputed facts establish a lack of jurisdiction. It argued that (1) Texas, the City of Tyler, Tyler ISD, and Wood County[6] have governmental immunity from suit unless abrogated by the legislature; (2) Tyler Plan, Tyler ISD Plan, and Wood County Plan, as self-insurance funds of state political subdivisions, have governmental immunity, absent waiver; and (3) third-party administrators for government health plans, like HealthFirst, have the same immunity from suit as the governmental entities and their plans. HealthFirst asserted:

> Each of the Governmental Entities funds its own health benefits plan, and each determines what benefits, if any, it will provide to its employees and other beneficiaries. Although HealthFirst provides services to each of the Governmental Entities to facilitate the provision of health care benefits by those entities, HealthFirst does not have a financial stake in whether any of the claims for services provided to the beneficiaries of the Governmental Entities Plans are approved or denied. HealthFirst has no discretionary authority to interpret the terms of the Governmental Entities Plans or adjudicate claims under the terms of its agreements with those plans; each of the Governmental Entities retains sole and exclusive authority to determine coverage issues under its plan. Moreover, because each of the Governmental Entities is responsible for paying claims for benefits under its plan, HealthFirst's actions in paying Plaintiffs' claims in accordance with the provisions of the Governmental Entities Plans render the Governmental Entities "responsible for paying the claims…[and] expose State funds, an outcome that has…encouraged Texas courts to extend immunity to health insurance plan administrators."

(internal citations omitted). HealthFirst further argued that Appellees failed to plead waiver of governmental immunity:

> Each of Plaintiffs' causes of action against HealthFirst is premised on Plaintiffs' supposed rights under the Ancillary Services Agreement and what they call "Payor Agreements," but Plaintiffs have failed to plead sufficient jurisdictional facts demonstrating a waiver of HealthFirst's

---

[5] *See* **FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Hous. Sys.**, 255 S.W.3d 619, 633 (Tex. 2008) ("[A]mended pleadings and their contents take the place of prior pleadings").

[6] The online Smith County court records reflect that Wood County is not a party to the underlying proceeding. According to the record, Health-First is the third-party administrator for the health benefit plan sponsored by Wood County. Appellees allege that on information and belief (1) Administrator Appellants "entered into a Payor Agreement (as that agreement is defined in the Ancillary Services Agreement) with Wood County so that Wood County could become a participating payor in the AccessDirect network and its participants and beneficiaries could access RCG's life-sustaining dialysis services," (2) "Wood County had responsibilities to enter and/or oversee network contracts, and/or adjudicate claims and appeals for the Wood County Plan in accordance with network and other agreements," and (3) the "Wood County Payors, and/or another entity with the ability to bind the Wood County Plan, entered into one or more agreements with AccessDirect and/or HealthFirst, under which the Wood County Plan became a participating payor in the AccessDirect network."

7

governmental immunity in connection with those causes of action. Plaintiffs' breach of contract cause of action is premised on their purported rights under the Ancillary Services Agreement, and their request for declaratory relief is premised on their imagined rights under a "unified contract" consisting of the Ancillary Services Agreement and "Payor Agreements."

According to HealthFirst, Appellees failed to plead "facts demonstrating that either the Ancillary Services Agreement or any of the supposed Payor Agreements is a 'written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity.'" *See* TEX. LOC. GOV'T CODE ANN. § 271.152 (West 2016) ("local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract," subject to the terms and conditions of subchapter I). HealthFirst asserted:

> The Ancillary Services Agreement, a contract executed only by RCG Texas and AccessDirect, is on its face neither a contract properly executed on behalf of HealthFirst nor one stating the essential terms of an agreement for providing services to HealthFirst. Similarly, although Plaintiffs allege, based upon unspecified "information and belief," that HealthFirst entered into Payor Agreements, Plaintiffs do not plead any facts demonstrating that any such agreement was a **written contract** as required by Section 271.152. Indeed, they cannot make that allegation, because neither HealthFirst, any of the Governmental Entities, nor any of the Governmental Entities Plans has executed a written Payor Agreement, and none has authorized any other entity to enter into a written Payor Agreement on its behalf. Moreover, neither HealthFirst, any of the Governmental Entities, nor any of the Governmental Entities Plans has executed a written contract with Plaintiffs stating the essential terms of an agreement for providing goods or services to it, and none has authorized any other entity to enter into any such written agreements with Plaintiffs on its behalf.

HealthFirst stated it is undisputed that it has governmental immunity, which has not been waived:

> (1) Tyler is a Texas home-rule municipality and political subdivision of the State of Texas, (2) Tyler Plan is a health benefits plan established by Tyler for the benefit of Tyler's eligible employees and their eligible dependents whose benefits are self-funded through a benefit fund or trust established by Tyler and self-funded with contributions from Tyler; (3) Tyler ISD is a public Texas independent school district and a political subdivision of the State of Texas, (4) Tyler ISD Plan is a health benefits plan established by Tyler ISD for the benefit of its eligible employees and their eligible dependents under the authority of TEX. EDUC. CODE § 22.005 whose benefits are self-funded through a benefit fund or trust established by Tyler ISD and self-funded with contributions from Tyler ISD; (5) Wood County is a Texas county and political subdivision of the State of Texas, and (6) Wood County Plan is a health benefits plan established by Wood County for the benefit of its eligible employees and their eligible dependents under the authority of TEX. GOVT. CODE Chapter 2259 whose benefits are self-funded through a benefit fund or trust established by Wood County and self-funded with contributions from Wood County. Similarly, there can be no dispute that each of the Governmental Entities funds its own health benefits plan and each determines what benefits, if any, it will provide to its employees and other beneficiaries.

> HealthFirst has shown that it facilitates the provision of health care benefits by the Governmental Entities but does not have a financial stake in whether any of the claims for services provided for the plans' beneficiaries are approved or denied. HealthFirst has also provided evidence showing that it has no discretionary authority to interpret the terms of the Governmental Entities Plans or adjudicate claims. Moreover, HealthFirst has shown that its actions in paying Plaintiffs' claims in accordance with the provisions of the plans would render the Governmental Entities responsible for paying the claims, in that each of the Governmental Entities has agreed to indemnify it "from and against any and all claims…to the extent that such claims…arise out of or are based upon… an interpretation of the Plan."
>
> …
>
> The undisputed evidence also establishes that HealthFirst's governmental immunity has not been waived. Indeed, it is undisputed that HealthFirst never executed the kind of written Payor Agreement upon which Plaintiffs base their claims, authorized any other entity to enter into such a Payor Agreement on its behalf, executed a written contract with either of the Plaintiffs stating the essential terms of an agreement for providing goods or services to it, or authorized any other entity to enter into any such written agreement with either of the Plaintiffs on its behalf.

In its second amended plea, AccessDirect likewise asserted governmental immunity based on its provision of services to the City of Tyler, Tyler ISD, Wood County, and each entity's self-funded health benefits plan. It argued the following:

> Defendant provided services to the City of Tyler and its self-funded health benefits plan, the Tyler Independent School District and its self-funded health benefits plan, and Wood County and its self-funded health benefits plan in facilitating the provision of health care benefits to the beneficiaries of the plans. Each of those entities has governmental immunity from suit in connection with the Governmental Claims. Each governmental entity funds its own health benefits plan, and each governmental entity determines what benefits, if any, it will provide to its employees and other beneficiaries. Defendant does not have a financial stake in whether any of the claims for services provided to the beneficiaries of the Plans of the City of Tyler, Tyler Independent School District, and Wood County are approved or denied.

(Internal citations omitted).

Appellants also filed a joint plea to the jurisdiction and alternative summary judgment motion on grounds that Appellees' claims are preempted by ERISA because those claims meet the two prongs of the ERISA preemption test. *See* **Hubbard v. Blue Cross & Blue Shield Ass'n**, 42 F.3d 942, 945 (5th Cir. 1995) (ERISA bars claims when "(1) the state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationship between the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries"); *see also* **Ambulatory Infusion Therapy Specialist, Inc. v. N. Am. Adm'rs, Inc.**, 262 S.W.3d 107, 113 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Regarding the first prong, they argued that Appellees' claims relate to the plans because they "challenge how Plaintiffs' requests for

payment were processed and the administration of the Plans, areas of exclusive federal concern." Appellants argued as follows:

> Plaintiffs' complaints about the processing of their claims and the administration of the Plans are at the heart of Plaintiffs' Claims. Plaintiffs make this clear in the Petition when, for example, they allege as part of their breach of contract claims:
>
>> On information and belief, HealthFirst and AccessDirect assisted the Payors in attempting to evade their network payment responsibilities by advising the Payors in implementing plan document provisions that specifically target and reduce reimbursement for dialysis, without RCG's consent.
>>
>> HealthFirst further breached the Ancillary Services Agreement by administering and processing medical claims in contravention of the Ancillary Services Agreement and Network Agreement and making decisions to price claims below the Network Rate.
>
> Similarly, Plaintiffs' implied-in-fact contract cause of action against the AHS Defendants challenges the administration of the Plans and how claims were processed and paid, in that Plaintiffs complain (1) the claims were paid "at various rates below the Network Rate" and (2) there was a "failure to pay . . . in accordance with the Network Rate" because of Plan provisions that Plaintiffs allege "specifically target and reduce" payments to Plaintiffs. And Plaintiffs' unjust enrichment claims are grounded in Plaintiffs' complaints about the administration of the Plans and Defendants' processing of claims, in that Plaintiffs allege, for example, that "HealthFirst was the TPA handling claims administration and, in that capacity, HealthFirst processed the claims and decided how much should be paid on each claim…[so that the] AHS Defendants, HealthFirst, or third parties acting on their behalf also forcibly recouped some payments…" Because Plaintiffs' allegations challenge the processing and payment of benefit claims and the administration of ERISA benefit plans, those allegations establish that Plaintiffs' Claims encroach on areas of exclusive federal concern and consequently meet the first prong of the conflict preemption test.

Regarding the second prong, Appellants argued that Appellees' claims "directly affect the relationship between traditional ERISA entities–the employer, the plan and its fiduciaries, and the participants and beneficiaries." According to Appellants, Appellees' claims constitute a collateral challenge to an ERISA administrator's coverage determinations and are preempted because Appellees "assert that they are medical service providers seeking compensation, not under the terms of an ERISA-governed plan, but pursuant to the provisions of a contractual arrangement independent of the plan's obligation to pay." Appellants represent that there is no dispute that each patient has some coverage under the plans for dialysis services and this dispute concerns the extent of such coverage. They maintain that "although Plaintiffs' Claims are couched in terms of an attempt to recover on an independent promise to pay, those claims are really an attempt to expand the rights of the Patients under their ERISA plans." But according to

Appellants, "resolution of those claims requires an inquiry into the administration of an ERISA-governed plan, an area of exclusive federal concern."

For these reasons, Appellants argued that the jurisdictional facts are undisputed such that the trial court's jurisdiction is negated. They point to the following for support:

> As demonstrated above, Plaintiffs have obtained assignments of the Patients' rights and benefits under the Plans and are authorized to act as the Patients' personal representatives. In their demand letters to Defendants[,] Plaintiffs asserted that their claims against Defendants were based on the Patients' rights under the Plans and that Fresenius[7] was making demand on Defendants "in its capacity as an assignee to the rights and benefits of the Patients." Plaintiffs asserted in their demand letters that the Plans' adjudication and payment of Plaintiffs' claims were contrary to the Plans' own documents and that the Plans' reliance on Plan document provisions did not trump the provisions of the Ancillary Services agreement. Plaintiffs explicitly confirmed in their demand letters they were seeking additional benefits due under the Plans. They also asserted in those demand letters that ERISA prohibited Defendants' recoupment efforts. Finally, Plaintiffs asserted that Defendants' handling of Fresenius's claims violated applicable ERISA provisions and demanded a "full and fair review of its appeals by a fiduciary of the Plan" as well as Plan documents relevant to Defendants' benefit determinations.

Simply reviewing the pertinent jurisdictional pleas and responses does not inform this Court of the trial court's rulings. For instance, regarding Administrator Appellants' pleas, the trial court could have found that they are not entitled to the same immunity as the governmental entities. Conversely, the trial court could have found that they are entitled to immunity, but that immunity was waived. Regarding the joint plea, with respect to question one, it is not apparent from the record whether the trial court found that a unified network agreement can be formed by multiple contracts signed by different parties and, if so, whether those contracts bind all parties to the terms of an agreement they did not sign absent an express written commitment to be so bound. And with respect to question two, the trial court was required to determine whether ERISA preempted Appellees' claims and, in so doing, decide whether the two prongs of preemption applied. If the trial court concluded ERISA does not preempt Appellees' claims, the trial court could have found that prong one applied but not prong two, or vice versa, or that neither prong applied. While we could presume from the trial court's overruling of the pleas and the specific questions presented for appeal, that the trial court believed Appellants can be bound to the terms of an agreement they have not signed, Appellees' claims are not preempted by ERISA, and Administrator Appellants are not entitled to immunity, we decline to so speculate.

---

[7] Fresenius appears to refer to Fresenius Medical Care Holdings, Inc. d/b/a Fresenius Medical Care North America, of which Appellees are affiliates.

Concluding that the trial court made certain findings, based on speculation, would render Rule 168 meaningless.

Accordingly, we conclude that the record demonstrates that the trial court could have denied the pleas based on one or more conclusions. *See JETX Energy, LLC v. Lonestar Operating, LLC*, No. 10-23-00073-CV, 2023 WL 3346572, at *1-2 (Tex. App.—Waco May 10, 2023, no pet.) (mem. op.) (denying and dismissing for want of jurisdiction petition for permissive appeal; examination of arguments in record revealed that trial court could have granted each motion based on one or more conclusions of law); *see also Safeco Ins. Co. of Indiana v. Rodriguez*, No. 07-18-00150-CV, 2018 WL 3031597, at *2 (Tex. App.—Amarillo June 13, 2018, order) (denial of summary judgment combined with identification of "controlling question of law" in same order could imply a ruling on controlling legal question, but appellate court declined to indulge in such speculation because trial court may have based denial of summary judgment on unrelated material question of fact); *Orion Marine Constr., Inc. v. Cepeda*, No. 01-18-00323-CV, 2018 WL 3059756, at *2 (Tex. App.—Houston [1st Dist.] June 21, 2018, no pet.) (mem. op.) ("[a]n unexplained ruling is not subject to permissive appeal if its substantive basis is unstated and not apparent from the appellate record"); *Borowski v. Ayers*, 432 S.W.3d 344, 348 (Tex. App.—Waco 2013, no pet.) (dismissing permissive appeal for trial court's failure to substantively rule on controlling legal issue; controlling question was actually two questions and trial court could have denied summary judgment for either of two reasons). As such, the orders serve as nothing more than an attempt to certify three legal questions for our review. Section 51.014(d) does not contemplate using an interlocutory appeal as a mechanism to present certified questions. *Bancalari*, 495 S.W.3d at 889. Under these circumstances, any opinion issued by this Court would necessarily be advisory because there is nothing in the record showing that the trial court ruled on the specific legal issues that Appellants present to us to decide. *Id*. at 889-90; *Bank of New York Mellon v. Guzman*, 390 S.W.3d 593, 597 (Tex. App.—Dallas 2012, no pet.). Because the trial court failed to make substantive rulings on the identified "controlling legal issues," these questions certified by the trial court's orders do not involve controlling questions of law, and Section 51.014(d) does not authorize us to reach them on interlocutory appeal. *See Archibald v. El Paso Orthopedic Surgery Group*, *P.A.,* No. 08-22-00091-CV, 2023 WL 2214184, at *7 (Tex. App.—El Paso Feb. 24, 2023, no pet.) (mem. op.); *see also Cepeda*, 2018 WL 3059756, at *3 (to extent there are unresolved questions of law, a

permissive appeal is an improper vehicle for resolving them; appellate courts are "not statutorily authorized to decide controlling questions of law in the first instance"); *Borowski*, 432 S.W.3d at 347 (legislature's institution of permissive appeal procedure is "premised on the trial court having first made a substantive ruling on the controlling legal issue being appealed").

## DISPOSITION

For the reasons discussed above, we ***deny*** the petition for permissive appeal.

Opinion delivered May 22, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 22, 2024**

**NO. 12-24-00056-CV**

**ACCESSDIRECT- A PREFERRED PROVIDER NETWORK, INC., AHS EAST TEXAS HEALTH SYSTEM, LLC, ARDENT HEALTH SERVICES GROUP HEALTH PLAN, CAVENDER STORES, LTD., CAVENDER STORES LTD. EMPLOYEE BENEFIT PLAN, HEALTHFIRST TPA, INC., CITY OF TYLER, CITY OF TYLER MEDICAL PLAN, TYLER INDEPENDENT SCHOOL DISTRICT, TYLER INDEPENDENT SCHOOL DISTRICT MEDICAL BENEFIT PLAN,**
Appellants
V.
**RCG EAST TEXAS LLP AND RENAL CARE GROUP TEXAS, INC.,**
Appellees

Permissive Appeal from the 114th District Court
of Smith County, Texas (Tr.Ct.No. 21-1554-B)

THIS CAUSE came to be heard on Appellant's petition for permissive appeal; and the same being considered, it is the opinion of this Court that the petition should be denied.

It is therefore ORDERED, ADJUDGED and DECREED by this Court that the petition for permissive appeal be, and the same is, hereby **denied**; and that this decision be certified to the court below for observance.

By *memorandum* opinion.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J*